## Commonwealth *v.* Yount, Appellant.

Argued September 25, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Francis V. Sabino,* with him *Harry R. Ruprecht,* and *Harrison, King, Bowman, Sabino and Gillotti,* for appellant.

*John K. Reilly, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, January 24, 1974:

In October of 1966, a jury found appellant guilty of the crimes of murder in the first degree and rape. A sentence of life imprisonment was imposed. On appeal, this Court reversed the judgment of sentence and granted a new trial because appellant's rights, as mandated by *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), were violated. *Commonwealth v. Yount,* 435 Pa. 276, 256 A.2d 464 (1969), cert. denied, 397 U.S. 925, 90 S. Ct. 918 (1970).

On retrial in November, 1970, a jury again found appellant guilty of murder in the first degree,[1] and the penalty was again fixed at life imprisonment. Post-trial motions were denied and this direct appeal followed.[2] We now affirm.

On April 28, 1966, the body of Pamela Sue Rimer, an eighteen year-old high school student, was discovered in a wooded area near her home in Luthersburg, Pennsylvania. One of her stockings was knotted and tied around her neck. An autopsy revealed that death was caused by strangulation. Further examination dis-

---

[1] Appellant's motion to quash the indictment for rape was granted, and the second trial was for the crime of murder alone.

[2] Jurisdiction attaches by virtue of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp. 1973).

closed three slashes across the victim's throat and cuts of the fingers of her left hand, inflicted by a sharp instrument, and numerous wounds about her head, caused by a blunt instrument.

At approximately 5:45 a.m. on the morning of April 29, 1966, appellant, a teacher at the school the deceased had attended, voluntarily appeared at the state police substation in DuBois, Pennsylvania, and rang the doorbell. An officer opened the door and asked whether he could be of assistance. Appellant stated, "I am the man you are looking for." The officer asked whether he was referring to the "incident in Luthersburg," and appellant responded in the affirmative.

The officer then asked appellant to come into the police station and be seated. Leaving appellant unattended, the officer proceeded to a back bedroom where a detective and another police officer were sleeping, woke them, and informed them that "there was a man in the front that said we are looking for him." He then returned to the front office where appellant, who had removed his coat, hat, and gloves, identified himself as Jon Yount.

After dressing, the detective and the second officer entered the front office. The detective was told by the first officer that appellant's name was Jon Yount. The detective then asked appellant to be seated inside a smaller office adjacent to the front office, where he asked, "Why are we looking for you?" Appellant replied, "I killed that girl." Upon hearing that answer, the detective inquired, "What girl?", and appellant responded, "Pamela Rimer."

In response to the detective's next question, "How did you kill this girl?", appellant answered, "I hit her with a wrench and I choked her." At that point the detective gave appellant admittedly inadequate *Miranda* warnings, and began interrogation as to the details

of the crime. A written confession was subsequently obtained.

Prior to appellant's second trial, the question "How did you kill this girl?" and its answer, as well as the written confession were suppressed, on the authority of our prior decision, *Commonwealth v. Yount,* supra, as violative of *Miranda.* The admissibility of appellant's initial statements that the police were looking for him in connection with the Luthersburg incident is not challenged, nor could a challenge be successful. See *Commonwealth v. Miller,* 448 Pa. 114, 121 n.2, 290 A.2d 62, 65 n.2 (1972).

Appellant does contend, however, that the court erred in not suppressing his statement, "I killed that girl," and his identification of the victim as "Pamela Rimer." It is argued that these two admissions were the product of "custodial interrogation" and therefore should have been preceded by *Miranda* warnings. Appellant argues that warnings were required *before* the question "Why are we looking for you?" was asked.[3]

We are asked to determine the precise time when the need for *Miranda* warnings arose. It is now beyond question that " 'whenever an individual is questioned while in custody *or* while the object of an investigation of which he is the focus, before *any* questioning begins the individual must be given the warnings established in Miranda. . . .' " *Commonwealth v. D'Nicuola,* 448 Pa. 54, 57, 292 A.2d 333, 335 (1972) (quoting *Commonwealth v. Feldman,* 432 Pa. 428, 432, 248 A.2d 1, 3 (1968)). Accord, *Commonwealth v. Simala,* 434 Pa. 219, 225, 252 A.2d 575, 578 (1969) ; see *Commonwealth v. Hamilton,* 445 Pa. 292, 285 A.2d 172 (1971).

---

[3] In our prior decision, a new trial was granted because the written confession admitted into evidence was not preceded by warnings satisfying *Miranda.* The question of the admissibility of the two statements here challenged, not being necessary to our earlier decision, was not there decided.

It is, however, only that questioning which is interrogation initiated by law enforcement officers which calls for *Miranda* warnings. *Miranda v. Arizona,* supra at 444, 86 S. Ct. at 1612. As this Court held in *Commonwealth v. Simala,* supra at 226, 252 A.2d at 578: " '[I]t is not simply custody plus "questioning," as such, which calls for the Miranda safeguards but custody plus police *conduct* . . . calculated to, expected to, or likely to, evoke admissions.' " The rationale behind this holding is found in *Miranda,* where the Court stated: "Confessions remain a proper element in law enforcement. . . . The fundamental import of the privilege . . . is not whether [an individual] is allowed to talk to the police without the benefit of warnings and counsel, *but whether he can be interrogated.* There is no requirement that the police stop a person who enters a police station and states that he wishes to confess to a crime . . . . Volunteered statements of any kind are not barred by the Fifth Amendment . . . ." *Miranda v. Arizona,* supra at 478, 86 S. Ct. at 1630 (emphasis added).

Clearly, "any question likely to or expected to elicit a confession constitutes 'interrogation' under Miranda. . . ." *Commonwealth v. Simala,* supra at 227, 252 A.2d at 579. Accord, *Commonwealth v. Mercier,* 451 Pa. 211, 214, 302 A.2d 337, 339 (1973). But "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda v. Arizona,* supra at 478, 86 S. Ct. at 1630.

On this record it cannot be said that the two police inquiries here challenged constitute conduct calculated to, expected to, or likely to elicit an incriminating response, or that they were asked with an intent to extract or an expectation of eliciting an incriminating statement. All this record establishes is that the detective knew only that a man named Jon Yount—a name which the detective had never heard before—vol-

untarily came to the police station early in the morning and volunteered that the police were looking for him. In response to this information, the detective extemporaneously asked, "Why are we looking for you?" Appellant was not coerced, prompted, or urged to incriminate himself. To the contrary, the detective's inquiry, made in response to information volunteered by appellant, was of a neutral character and not interrogative.

Appellant's answer, "I killed that girl," was given freely and without compelling influence. It was therefore volunteered in the constitutional sense. That the answer was in fact incriminating does not alter its volunteered character nor preclude its use. *Miranda v. Arizona*, supra at 478, 86 S. Ct. at 1630.

Similarly, we are of the opinion that the statement identifying "that girl" as "Pamela Rimer" was volunteered. Appellant, without any compulsion, went to the substation and volunteered that he had killed "that girl." As we indicated in *Commonwealth v. Simala*, supra at 226 n.2, 252 A.2d at 579 n.2, after an incriminating, but ambiguous, statement is volunteered, as was done here, a question which does not do "anything more than clarify statements already made," in the absence of any coercion or prompting, subtle or overt, is permissible. See also Kamisar, " 'Custodial Interrogation' Within the Meaning of *Miranda*," in Institute of Continuing Legal Education, Criminal Law and the Constitution—Sources and Commentaries 335, 354 (1968).

Here, immediately upon hearing appellant's volunteered statement, "I killed that girl," the detective spontaneously asked, "What girl?" By this he sought only to clarify appellant's prior statement. Appellant responded, "Pamela Rimer." Such a clarifying inquiry, made in response to a statement volunteered by appellant during an interview which he initiated, is proper. The identification must be deemed constitutionally volun-

teered. Accord, *State v. Perry,* 14 Ohio St. 2d 256, 237 N.E.2d 891 (1968); *People v. Mercer,* 257 Cal. App. 2d 244, 64 Cal. Rptr. 861 (1967); see *Hicks v. United States,* 382 F.2d 158 (D.C. Cir. 1967).

As already indicated, appellant volunteered both that he had killed someone and the victim's identity. Because "[v]olunteered statements . . . are not barred by the Fifth Amendment," *Miranda v. Arizona,* supra at 478, 86 S. Ct. at 1630, their use as evidence was constitutionally permissible.

However, after these statements were given, *Miranda* warnings became necessary. *Commonwealth v. Yount,* supra at 280, 256 A.2d at 465; see *Commonwealth v. Feldman,* 432 Pa. 428, 248 A.2d 1 (1968); *Commonwealth v. Jefferson,* 423 Pa. 541, 226 A.2d 765 (1967). Appellant's initial admission and identification created the critical moment after which interrogation without *Miranda* warnings was impermissible. It was the absence of warnings at that moment, and not before, that required our prior reversal. The earlier, volunteered statements, however, were not the product of interrogation initiated by the police.[4]

On this record, therefore, it must be concluded that the Commonwealth satisfied its burden of proving by a preponderance of the credible evidence that the two statements here challenged were constitutionally permissible evidence. *Commonwealth v. Ravenell,* 448 Pa. 162, 292 A.2d 365 (1972); Pa. R. Crim. P. 323(h).

Appellant raises ten additional assignments of error. These need be discussed only briefly.

Appellant contends that the trial court erred in refusing his timely motions for a change of venue, and advances three arguments in support of this position.

---

[4] In light of our determination that appellant's statements were volunteered, we need not determine, as the Commonwealth argues, whether appellant was then in "custody." See *Commonwealth v. Marabel,* 445 Pa. 435, 283 A.2d 285 (1971).

First, it is asserted that excessive pretrial publicity prevented a fair trial. In responding to this argument, the trial court observed: "The first of the trials occurred in 1966, and as pointed out herein, the second one occurred in 1970. As the record will indicate there was practically no publicity given to this matter through the news media in the meanwhile except to report that a new trial had been granted by the Supreme Court. It is to be noted also that throughout the second trial there was practically no public interest shown in the trial; one thing to be noted is that on some days there being practically no persons present even to listen to it. . . ." These findings, fully supported by the record, do not sustain appellant's claim, and the court properly denied appellant's motion for a change of venue predicated on this theory. *Commonwealth v. Pierce,* 451 Pa. 190, 303 A.2d 209, cert. denied, 414 U.S. 878, 94 S. Ct. 164 (1973) ; *Commonwealth v. Johnson,* 440 Pa. 342, 269 A.2d 752 (1970).

Second, appellant contends that the excusing of a large number of veniremen for cause, and the nature of the answers of those so excused, conclusively demonstrated substantial community bias and prejudice which required a change of venue. Nothing in this record, however, refutes the court's assertion that it liberally granted appellant's challenges for cause "to assure that there could be no complaint about the final jury empanelled." Neither does the voir dire, as appellant argues, reveal a "clear and convincing" build-up of prejudice or a " 'pattern of deep and bitter prejudice' shown . . . throughout the community" which would require a change of venue. *Irvin v. Dowd,* 366 U.S. 717, 725, 727, 81 S. Ct. 1639, 1644, 1645 (1961). See *Commonwealth v. Hoss,* 445 Pa. 98, 103-07, 283 A.2d 58, 61-63 (1971) ; *Commonwealth v. Swanson,* 432 Pa. 293, 248 A.2d 12 (1968), cert. denied, 394 U.S. 949, 89 S. Ct. 1287 (1969).

Third, it is argued that the Act of March 18, 1875, P.L. 30, § 1, 19 P.S. § 551 (1964), mandated a change of venue. This Act states, inter alia:

"In criminal prosecutions the venue may be changed, on application of the defendant . . .

". . . .

". . . When, upon second trial of any felonious homicide, the evidence on the former trial thereof shall have been published within the county in which the same is being tried, and the regular panel of jurors shall be exhausted without obtaining a jury."

The Act, however, by its own terms, is directed to the sound discretion of the trial court. As this Court established in *Commonwealth v. Karmendi,* 328 Pa. 321, 337-38, 195 A. 62, 69 (1937) : "The act is not mandatory; it lies within the sound discretion of the court below: Com. v. Cleary, 148 Pa. 26, but in a particularly notorious case in a given community, this court will review that discretion, and if in its judgment it is felt the accused could not help but be prejudiced in her subsequent trial by the feeling engendered, a new trial will be granted. . . ." See also *Commonwealth v. Sacarakis,* 196 Pa. Superior Ct. 455, 175 A.2d 127 (1961). Although the regular panel of jurors was in fact exhausted before the jury was selected,[5] this circumstance alone obviously does not require a change of venue. It cannot be said that the court abused its discretion

---

[5] Indeed, the exhaustion of the initial array is not an unusual occurrence. As Dean Laub observed: "It sometimes happens that there are so many disqualified or excused jurors that the array is not large enough to permit the completion of a particular civil or criminal panel. This extraordinary situation is frequently encountered during the selection of a panel in murder cases. In that type of case the large number of peremptory challenges allowed to each side, and the liberal allowance of causal challenges frequently exhausts the array or reduces it to the point where the trial cannot proceed until additional jurors have been summoned." 1 B. Laub, Pennsylvania Trial Guide § 34.4 at 81 (1959).

where, as here, the record fails to disclose undue community prejudice.

Similarly, we reject appellant's argument that, during voir dire, the court erred in denying certain challenges for cause. Our reading of the testimony of the challenged jurors satisfies us that the trial court correctly concluded that "even where a juror may have had any opinion in the matter, the jury was without prejudice and was able to and did arrive at its verdict on the testimony and the law involved." The record shows that none of the jurors had a fixed opinion as to appellant's guilt or innocence, or was otherwise legally unable to serve. See *Commonwealth v. Hoss*, supra at 107, 283 A.2d at 63-64; *Commonwealth v. Swanson*, supra at 299, 248 A.2d at 15; *Commonwealth v. McGrew*, 375 Pa. 518, 525, 100 A.2d 467, 470 (1953).[6]

Appellant also argues that all evidence seized during a search of his automobile should have been suppressed. He asserts that the search warrant relied upon by the police was issued without probable cause.

Before the time appellant appeared at the DuBois substation, another state policeman, working entirely separately and in a location different from the station

---

[6] See also ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury § 2.5 (Approved Draft, 1968). The Commentary to that section suggests:

"A challenge for cause to an individual juror may be made only on the ground:

". . . .

"(j) That the juror has a state of mind in reference to the cause or to the defendant or to the person alleged to have been injured by the offense charged, or to the person on whose complaint the prosecution was instituted, which will prevent him from acting with impartiality; but the formation of an opinion or impression regarding the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the evidence." Id. 68-69.

to which appellant went, received from two witnesses a description of an automobile they had seen near where the victim's body was found. The witnesses reported that, at about the time the murder was committed, the automobile passed their home headed toward the scene, and that later it passed from the opposite direction travelling at high speed. That policeman, working only from this information, learned that one Jon Yount owned an automobile fitting the description.

After appellant admitted that he had killed Pamela Rimer, one of the officers at the substation reported that fact to the main police barracks. This collective knowledge, properly before the magistrate,[7] constituted the requisite probable cause for the issuance of the search warrant. See *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509 (1964); *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973); *Commonwealth v. D'Angelo*, 437 Pa. 331, 263 A. 2d 441 (1970). Since appellant's admission was not tainted we agree with the trial court that the subsequent search was not impermissible as the "fruit of a poisonous tree." *Commonwealth v. Marabel*, 445 Pa. 435, 444, 283 A.2d 285, 289 (1971); see *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407 (1963).

Appellant contends that a pocketknife found on his person when he was arrested was improperly admitted into evidence. As previously noted, the victim suffered cuts of the neck and fingers, and appellant was arrested about twelve hours after the commission of the crime. The knife was of a kind that could have inflicted the wounds, even though the prosecution was unable con-

---

[7] For purposes of establishing probable cause, the officer who obtained the warrant was entitled to rely on the information communicated to him from the DuBois substation. *United States v. Stratton*, 453 F.2d 36, 37-38 (8th Cir.), cert. denied, 405 U.S. 1069, 92 S. Ct. 1515 (1972).

clusively to demonstrate that the particular knife was the weapon used. Its relevance cannot be successfully challenged. "The fact that the accused had a weapon or implement suitable to the commission of the crime charged, such as a knife . . . is always a proper ingredient of the case for the prosecution." 1 Wharton's Criminal Evidence § 157 at 289-90 (13th ed. C. Torcia 1972).

This relevant evidence clearly was admissible. As this Court recently held in *Commonwealth v. Ford*, 451 Pa. 81, 84, 301 A.2d 856, 857 (1973) : "[P]ositive testimony that the knife in question was actually the murder weapon is not required prior to introduction into evidence. . . . If a proper foundation for the admission of the evidence has been laid, as here, then admission into evidence is permissible. . . . The fact that the knife could not be positively identified affects the weight of such evidence, but not its admissibility. . . ."[8]

Here, not only was the knife a possible murder implement, but it was found upon the person of the appellant at a time "reasonably proximate to the commission of the crime." 1 Wharton's Criminal Evidence § 211 at 442 (13th ed. C. Torcia 1972). A foundation

---

[8] See also 1 Wharton's Criminal Evidence § 211 at 441-42 (13th ed. C. Torcia 1972) (footnotes omitted) :

"It is relevant to show that the defendant owned or had access to an implement with which the crime could have been committed.

The possession by the defendant of a weapon or implement of crime is relevant even though there is no evidence that it was used in the commission of any particular crime, but there must be evidence that some crime was committed.

The possession or ownership of the weapon or implement of crime must be reasonably proximate to the commission of the crime. If too great a period has elapsed between the commission of the crime and the period of possession or ownership, the evidence would be too remote and hence inadmissible. Thus, in a prosecution for assault with intent to kill, the admission in evidence of the finding of a weapon on the person of the accused when he was arrested nearly a month after the assault, was prejudicial error."

sufficient to support the admission of the knife was laid. Its evidentiary use was therefore a proper element in the prosecution's case.[9]

Appellant assigns as error the admission of certain photographs of decedent and several items of her clothing, including the knotted stocking which was one of the murder weapons. It is well-settled law in this Commonwealth that "the admission of photographs exhibiting the body of a deceased in homicide cases is primarily within the discretion of the trial judge. . . ." *Commonwealth v. Powell*, 428 Pa. 275, 278, 241 A.2d 119, 121 (1968). Moreover, this Court has repeatedly declared that "the proper test to be applied by a trial court in determining the admissibility of photographs in homicide cases is whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. . . ." Id. at 278-79, 241 A.2d at 121. Accord, *Commonwealth v. Ford*, supra at 86, 301 A.2d at 858; *Commonwealth v. Eckhart*, 430 Pa. 311, 317, 242 A.2d 271, 274 (1968). This test is also applicable to the other demonstrative evidence, i.e., the clothing, admitted here. See *Commonwealth v. Ford*, supra at 85, 301 A.2d at 857-58.

It is to be noted that the stocking was one of the murder implements. The paramount evidentiary need for this item is obvious. As to the other challenged items, the court found, and we agree that "[t]he photographs aided in the jurys' [sic] understanding of the type of injuries inflicted, where and how the deceased was found, the site and position of the deceased, and in very definite corroboration of the oral testimony of witnesses. . . ." Moreover, the court stated that "the photographs were [not] at all inflamatory[sic]," and there

---

[9] Appellant also contends that he was entitled to an instruction that the knife had no evidentiary value. Because the knife was correctly admitted, appellant's point for charge was properly refused.

is no suggestion that the victim was, for example, pictured naked, or that the photographs or items of clothing were gruesome or grotesque.[10]  On this record, we hold that the court correctly applied the *Powell* test, that the evidentiary value of the admitted evidence outweighed any potential for prejudice, and that the court did not abuse its discretion in admitting the challenged items.

Appellant also argues that the trial court erred in denying his motion to sequester the Commonwealth witnesses, particularly the state police officers.  This Court has previously held that "the question of sequestration of witnesses is left largely to the discretion of the trial Judge and his decision thereon will be reversed only for a clear abuse of discretion." *Commonwealth v. Kravitz,* 400 Pa. 198, 218, 161 A. 2d 861, 870 (1960), cert. denied, 365 U.S. 846, 81 S. Ct. 807 (1961) ; see Pa. R. Crim. P. 326.

In its opinion. the court justified its denial of the motion, by explaining that "no witness was called who had not previously testified at the first trial; and examination of all the testimony will indicate that it was much as was given at the first trial of this case."  These witnesses were not sequestered at the first trial.  The record also establishes that the same police officers who testified at trial also testified a few weeks earlier at the suppression hearing.  No request to sequester was then made.  We find the court's reasons for refusing to sequester the officers convincing, and find no abuse of discretion.

It is also argued that the trial court variously erred in its instructions to the jury.  Only one of these now-asserted challenges, however, was properly raised by specific objection before the jury retired to deliberate.  That objection alone can now be reviewed.  *Common-*

---

[10] We also note that the court in its discretion did not allow these allegedly inflammatory items into the jury room.

*wealth v. Watlington,* 452 Pa. 524, 306 A.2d 892 (1973) ; Pa. R. Crim. P. 1119(b). The objection is to an allegedly improper expression of the court's opinion that the evidence did not warrant a verdict of voluntary manslaughter.[11]

The trial court expressed the view that if the jury found that appellant did in fact maliciously kill decedent, the court recalled no evidence of extenuating circumstances which would reduce the act to voluntary manslaughter. The court, however, also gave the jurors a full, complete, adequate, and correct charge on voluntary manslaughter, and instructed them that voluntary manslaughter was an entirely permissible verdict. The trial judge also specifically instructed the jurors that their recollection of the testimony, and not his, controlled, that his opinion was no more than a gratuitous observation, and that the jury could and should return any verdict it felt justified. Moreover, the court did not express an opinion as to guilt or innocence or suggest that the jury return any particular verdict. The charge, read in its entirety, removed nothing from the province of the jury nor did it contain any judicial expression of guilt. The charge therefore was proper. *Commonwealth v. Archambault,* 448 Pa. 90, 290 A.2d 72 (1972) ; *Commonwealth v. Motley,* 448 Pa. 110, 289 A.2d 724 (1972) ; see *Commonwealth v. Miller,* 448 Pa. 114, 124-26, 290 A.2d 62, 67-68 (1972).

Appellant complains that the court erred in denying his motion for a mistrial based on allegedly inflammatory and prejudicial remarks by the prosecutor in his closing argument.[12] We are satisfied, as was the trial court, that the prosecutor's remarks were limited to the

---

[11] Appellant also argues that the court overemphasized the crime of murder in the first degree, and that it did not, while reviewing the evidence, sufficiently stress the jury's role as factfinder.

[12] It is contended that the prosecutor improperly commented on the gravity of the crime charged, that the inferences he drew from the evidence tended toward the speculative, and that he improperly

facts in evidence and the legitimate inferences therefrom, and consequently cannot be deemed improper. See *Commonwealth v. Goosby,* 450 Pa. 609, 301 A.2d 673 (1973); ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function § 5.8 (Approved Draft, 1971).

Finally, appellant contends that if the oral admission, the pocketknife, the clothing and photographs, and the items seized from appellant's automobile were improperly before the jury, then the remaining evidence could not sustain any verdict of guilty. Since we have determined that those items of evidence were properly admitted, this challenge must fail. Reviewing all the record evidence in the light most favorable to the Commonwealth, we are satisfied that the jury reasonably could have found, beyond a reasonable doubt, all the elements of murder in the first degree, and that the evidence therefore is sufficient to sustain the verdict. *Commonwealth v. Lee,* 450 Pa. 152, 154, 299 A.2d 640, 641 (1973).

Judgment of sentence affirmed.

Mr. Justice POMEROY concurs in the result.

---

defended, after appellant had attacked, the competence of the state police.