Commonwealth *v.* Russell, Appellant.

Argued November 30, 1973.  Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Harry J. Greenstein,* for appellant.

*Mark Sendrow,* Assistant District Attorney, with him *David Richman,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice Eagen, July 1, 1974:

William Russell was convicted by a jury of murder in the first degree, aggravated robbery, burglary and conspiracy.  Post-trial motions were denied, and a sentence of life imprisonment was imposed on the murder conviction as the jury directed in its verdict.  Additional prison sentences were imposed on each of the other convictions.  Russell filed this one appeal.[1]

---

[1] Separate appeals from the sentences imposed on the robbery, burglary and conspiracy convictions were not filed, and under the Appellate Court Jurisdiction Act of July 31, 1970, P. L. 673, No. 223, art. III, §203, 17 P.S. §211.203, appellate jurisdiction of these appeals is in the Superior Court.  However, since all of the crimes

The record discloses the following.

On October 17, 1968, John Seely and Adolph Schwartz entered the home of Dr. Frank Washick in Philadelphia with the intent to rob. Unbeknown to the felons, Mrs. Washick succeeded in phoning the police who arrived on the scene while the robbery was still in progress. One of the officers entered the residence through a rear door and was immediately fatally shot by Seely. In gunfire that followed, Seely was killed by one of the other police officers. Moments later, Schwartz surrendered after being discovered armed and hiding in an upstairs closet.[2]

In subsequent investigation, the police garnered evidence which indicated that the appellant Russell was the "mastermind" of the robbery. While Russell was not on the scene, this evidence established it was he who selected the house to be robbed, formulated the plan to be followed and recruited Seely and Schwartz to commit the crimes. He was also to share in the loot. His arrest and indictment on the charges here involved followed.

The trial testimony was very much in conflict as to Russell's involvement in the robbery. The Commonwealth called Joseph Grissell and Mary Roth, two individuals not involved directly, but who testified Russell was the "mastermind" of the plan. The defense called Adolph Schwartz, the captured robber, who tes-

---

involved arose out of the same facts and the Commonwealth has interposed no objection, we will, under the circumstances of this case, consider the one appeal as an appeal from the judgments imposed in all cases. See Section 503 of the Appellate Court Jurisdiction Act of 1970, supra, 17 P.S. §211.503.

[2] Schwartz was convicted by a jury of murder in the first degree and sentenced to life imprisonment. John McIntyre was also convicted by a jury of murder in the first degree and sentenced to life imprisonment in connection with the robbery and killing. It was established he aided in the crimes by driving the intended get-away automobile.

tified Russell in no way participated in the robbery.
Michael Borschell was called as a Commonwealth wit-
ness, apparently to testify to Russell's involvement, but
upon taking the witness stand he testified Russell was
not connected with the crimes.[3]  The jury's verdict rest-
ed primarily on a resolution of this conflicting testi-
mony.

The appeal asserts a number of assignments of error,
but we only need concern ourselves primarily with
one, that is, the testimony of a former assistant district
attorney.  The purpose of the Commonwealth in calling
this witness was to impeach the testimony of Borschell.
However, the questioning and testimony of this witness
was so prejudicial and outside the scope of fair play,
we have no recourse but to reverse.

The former assistant district attorney's testimony,
in part, was as follows: "Ladies and gentlemen, I spent
over an hour last night in the D.A.'s office.  I was as
close to Mr. Borschell as I am to the first gentleman
seated in the first row.  Mr. Borschell looked at me and
said, 'Joel, . . .' he referred to me as Joel . . . he said,
'. . . there's nothing personal here.'  I asked him, 'Have
you told the jury in this case that I told you to lie or
fabricate or enlarge or do anything other than tell the
truth?' and he didn't answer.  And other people said,
'Tell Mr. Moldovsky what you said,' and he wouldn't.
Finally, he said, no, I hadn't asked him to lie about
anything, and that he told me everything in here.  And
ladies and gentlemen it was only after very, very care-
ful scrutinizing of the evidence and independent inter-
rogation of other witnesses in comparison that the ar-
rest was made of Mr. Russell.  Only when there was
no doubt, no doubt whatsoever, that he had mastermind-

---

[3] The defense called three witnesses who testified Borschell
had told them he was going to lie, and testify Russell was guilty,
in the hope of getting favorable treatment from the authorities.

ed this crime."[4] This comment was clearly prejudicial to the accused because it was a clear expression of opinion of guilt on the central issue in the case, i.e., conspiracy. This witness explicitly told the members of the jury that after the district attorney's office had investigated the crimes, there was "no doubt" Russell was guilty. Moreover, in drawing such a conclusion the witness passed on the credibility of all the defense witnesses, and, in effect, told the jury these witnesses were lying. This witness completely usurped the function of the jury by drawing a conclusion on the ultimate issue of the case. Moreover, under the facts of the instant case, this witness was not in a position to make such a conclusion, since he had no firsthand knowledge of the crimes, and he was called for the limited purpose of impeachment.

This Court has consistently made it clear we will not allow the district attorneys of this Commonwealth to express their personal opinion or beliefs on issues which are within the province of the jury, when such opinions are not based on fair arguments from the evidence presented. See *Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A.2d 205 (1974); *Commonwealth v. Toth,* 455 Pa. 154, 314 A.2d 275 (1974); *Commonwealth v. Revty,* 448 Pa. 512, 295 A.2d 300 (1972); *Commonwealth v. Potter,* 445 Pa. 284, 285 A.2d 492 (1971). We believe the instant case fits squarely within this line of cases. As recently as *Lipscomb,* we made it emphatically clear that expression of personal belief has no place in the argument of a district attorney to the jury. Herein the former assistant district attorney not only expressed his opinion on the guilt of Russell, but he also expressed an opinion on the believability of the defense witnesses who exonerated Russell, and these ex-

---

[4] Defense counsel made a timely objection and a motion for a mistrial.

pressions of personal belief were without proper foundation. We, therefore, rule that a district attorney, whether he be a witness or a prosecutor, may not make *improper statements of this nature, which clearly prejudice the accused.* To do so is to violate the rights of the accused, and the professional standards which this Court demands and which society deserves.

The Commonwealth attempts to distinguish the instant case from our prior cases on two grounds. First, the Commonwealth points out the witness at the time of trial was not a member of the district attorney's staff. Although, we fully recognize that a distinction must be made between the standard of conduct to which we hold a district attorney in his statements to the jury, and the standard of conduct to which a "lay" witness must conform, we do not believe such a distinction should be made instantly. Herein, the Commonwealth made every effort to impress upon the jury the witness was a "former assistant district attorney." When the Commonwealth clothes a witness in the vestiges of the office of district attorney, which clearly bear upon his credibility,[5] the witness must conform to the standards this Court has established for district attorneys. Moreover, there is no question in our minds that when this witness made the statement he fully knew it was improper and highly prejudicial.

Second, the Commonwealth argues that because the trial judge gave a curative instruction to the jury on the improper opinion, the effect of the improper opin-

---

[5] In *Berger v. United States*, 295 U.S. 78, 55 S. Ct. 629 (1935), the United States Supreme Court recognized this, stating: "It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." *Id.* at 88, 55 S. Ct. at 633.

ion was rendered harmless. Although, we recognize the trial judge gave curative instructions, under the instant facts, we do not believe this was adequate to fully protect the rights of the accused. Presently, the opinion of the former assistant district attorney went right to guilt or innocence, and the witness unequivocally told the jury he personally knew, beyond a doubt, Russell was guilty. Moreover, this witness, in effect, expressed his opinion that all the defense witnesses were lying, and in this case the credibility of the witnesses was the crucial determination the jury had to make. Where the ultimate issues in the case rest upon a resolution of such conflicting testimony as the jury was faced with instantly, we have no alternative but to hold this is reversible error.

Since a new trial is required, we feel one other issue deserves discussion. In the course of the trial, the Commonwealth called a witness who was to testify Russell was involved in the crime. However, when the witness took the stand, he completely exonerated Russell. The Commonwealth was allowed to plead surprise,[6] and the district attorney attempted to impeach the credibility of the witness through the use of a prior inconsistent statement.[7] At the close of the case, the written statement was allowed to go out with the jury as an exhibit for impeachment purposes, and defense counsel strenuously objected to the jury having the written statement. The Commonwealth argues the trial judge committed no error in allowing this exhibit to go out with the jury, citing Rule 1114 Pa. R. Crim. P.; *Commonwealth v. Pitts.*, 450 Pa. 359, 301 A.2d 646 (1973);

---

[6] There is no question the trial judge properly let the Commonwealth plead surprise. See *Commonwealth v. Dancer*, 452 Pa. 221, 305 A.2d 364 (1973).

[7] The judge gave the proper charge that this was impeachment, not substantive evidence. See *Wilson v. Pennsylvania Railroad Co.*, 421 Pa. 419, 219 A.2d 666 (1966).

*Commonwealth v. Ravenell,* 448 Pa. 162, 292 A.2d 365 (1972) ; and, *Commonwealth v. Moore,* 443 Pa. 364, 279 A.2d 179 (1971).

Whether an exhibit, such as here involved, should be sent out with the jury is within the trial court's discretion. However, this discretion should be carefully exercised. See *Commonwealth v. Ravenell,* supra, and *Commonwealth v. Moore,* supra. After considering all of the attending circumstances, we conclude there was an abuse of this discretion instantly.

The exhibit was permitted in evidence solely for the purpose of impeachment. Despite the court's instruction[8] to the jury to consider the cross-examination for this purpose only, the danger still persisted it might be considered as substantive evidence and in a case, such as this, where the testimony as to guilt was highly conflicting, could prejudice the defendant unduly. Additionally, under the circumstances, it afforded the jury the opportunity of placing greater emphasis on what was included in the statement rather than what was legally permitted.

Judgments reversed, and a new trial is ordered.

Mr. Justice POMEROY concurs in the result.

---

[8] Although, there was a general instruction on the jury's use of impeachment testimony, there was no specific reference as to how the jury was to use the written prior inconsistent statement. Thus, it is possible the jury improperly used the written statement.