370 A.2d 373
**COMMONWEALTH of Pennsylvania**
v.
**James BENNETT, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1975.

Decided Feb. 28, 1977.

420

Charles Lowenthal, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Gold-blatt, Asst. Dist. Atty., Chief, Appeals Div., Miranne E. Cox, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Following a jury trial, James Bennett, the appellant, was convicted of murder in the first degree and aggravated robbery. After the trial court denied his post-verdict motions, Bennett was sentenced to a term of life imprisonment for murder and to a concurrent imprison-

ment of ten to twenty years for robbery. This direct appeal followed.[1]

Bennett assigns four trial errors as mandating a new trial. Finding no reversible error, we will affirm.[2]

## I

Appellant first objects to the refusal of the trial court to admit into evidence a statement given by an eyewitness to the crime, one April Young. Ms. Young, called as a Commonwealth witness, testified on direct examination that she saw the defendant shoot Calvin Turner. During the course of her cross-examination, defense counsel produced a statement allegedly given by Ms. Young to counsel prior to trial which in various particulars was inconsistent with her testimony. When confronted with the document, Ms. Young admitted that the signatures on it were hers, but denied having made most of the statements contained in it. The defense subsequently called to the stand one Joseph Prim, who testified that he had been present when the statement was given by April Young. He gave his recollection of the substance of that statement, and testified that the statement had been taken down by counsel in counsel's own words.

When later the statement was offered in evidence, the court sustained an objection to it on the

1. Bennett's appeal of the judgment of sentence imposed for murder was properly taken directly to this Court. *See* Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1975). The appeal of the judgment of sentence for aggravated robbery was originally taken to the Superior Court, which certified the appeal to this Court in order that the two appeals might be heard together.

2. Although the sufficiency of the evidence is not challenged on this appeal, our review of the evidence convinces us that the Commonwealth established beyond a reasonable doubt that James Bennett shot and killed one Calvin Turner during the course of a robbery at Turner's bar in the City of Philadelphia. *See* Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187.

ground that the document had not been properly authenticated, since Ms. Young had denied making the statement and the scrivener had not been called to verify it as hers. We find no error in the court's ruling. Furthermore, appellant was able to make substantial use of the statement in his questioning both of Ms. Young and of Prim. In this process the jury was made fully aware of the contents of the statement, the circumstances under which it was made, and that it had been signed by Young. The mere fact that it was not formally admitted into evidence was in no wise prejudicial to the defendant. *See* 1 Henry, Pennsylvania Evidence, § 1 at 4 n. 16 (1953 ed.).

## II

Appellant's next allegation of error relates to the testimony of a police detective who was present when the murder weapon was recovered from the victim's bar, where it had been hidden by Bennett's accomplice. The officer testified, over objection, that when he examined the weapon, a .38 snubnose revolver, it had a gray discoloration on the cylinder and barrel. He then testified, based upon his experience in firing weapons, that such discoloration indicated that the gun had been fired, although he could not say when it had been fired. The appellant contends that this testimony should not have been admitted because the officer had not been properly qualified as an expert in firearms. For three reasons we find no merit in this argument.

In the first place, the officer did not purport to testify as an expert, and his testimony was not "expert testimony" in the traditional sense. As the Superior Court has put it:

"[A] witness may state relevant facts known to him, because of experience, even though he is not regarded as an expert whose opinion would be admissible

on a hypothetical inquiry." *Commonwealth v. Harris,* 186 Pa.Super. 59, 63, 140 A.2d 344, 345 (1958).

The testimony was not intended to be determinative of whether the gun had been fired; it was, rather, in the nature of a statement of the officer's observations.

■ Secondly, even if the testimony were to be considered expert testimony, the question whether a witness is qualified to testify as an "expert" is within the sound discretion of the trial court and will not be overturned except in clear cases of abuse. *Commonwealth v. Davis,* 466 Pa. 102, 115, n. 9, 351 A.2d 642, 648 n. 9 (1976); *McCullough v. Holland Furnace Co.,* 293 Pa. 45, 141 A. 631 (1928); McCormick, Evidence § 13 at 29 (Rev. ed. 1972). We find no abuse in this case. The officer clearly was not a neophyte with firearms, and could be expected to have first hand knowledge concerning the firing of a weapon and its consequences in the appearance of the gun. His credibility, of course, was for the jury to pass upon.

Finally, the officer's testimony was at best merely cumulative because appellant's co-defendant, Barry Andrews, had already identified the revolver as the one used by Bennett during the robbery-murder.

### III

■■ Appellant objects to the fact that on re-direct examination of Barry Andrews, a co-conspirator called by the Commonwealth, the prosecuting attorney was permitted to question him concerning statements he had given the police before trial which were consistent with his testimony on direct examination. On cross-examination, defense counsel had attacked the credibility of Andrews by raising the inference that his testimony was motivated by self-interest in order to obtain more lenient treatment for himself. Appellant concedes that under these circumstances the Commonwealth was entitled to rehabil-

itate the witness by reference to prior consistent statements although such statements are not normally admissible. See, *e. g., Commonwealth v. Gaddy,* 468 Pa. 303, 362 A.2d 217, 223 (1976); *Commonwealth v. Wilson,* 394 Pa. 588, 602–03, 148 A.2d 234, *cert. denied,* 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959). He contends, however, that the rehabilitation in this case was "overly broad" in that the prosecutor was permitted to ask Andrews if the statement which he gave the police shortly after his arrest was "substantially" the same as his testimony. Appellant argues that this was an improper conclusion because the statements themselves were not introduced into evidence so that the jury could judge for itself whether they were "substantially" the same as Andrews' trial testimony. In dismissing this claim, we need only point out that under our case law which recognizes the above exception as to the use of prior consistent statements, there is no requirement that they be introduced into evidence if they are referred to; nor do we believe that the trial court abused its discretion in permitting the questioning and the response.

## IV

■ Appellant's final allegation of error relates to a portion of the trial court's charge to the jury. The court, in its initial charge, defined for the jury the crimes of murder in the first and second degrees and voluntary manslaughter. After three hours of deliberation, the jury requested that these definitions be repeated. The court did so and then, after the repeated definition of voluntary manslaughter, made the following additional comments:

"I have told you earlier[3] that it is in your power to find that a defendant is guilty of voluntary man-

---

3. In its main charge, following the definition of voluntary manslaughter, the trial judge had said, "Under the terms of the evidence as presented here, it does not seem to me that the crime of

slaughter, under these circumstances. And it is within your power to do that.

"But, it is my opinion, under the circumstances— and I give you my opinion. There's no binding effect upon you. But, under the circumstances, the crime of voluntary manslaughter would not be an appropriate verdict in this case. Because, there is no evidence, as I recall it, that there was any scene between the deceased and the person who shot him, that would argue a provocation, that a person would be transported out of their mind and kill him.

"If there was anything that happened here—and you must determine that under the evidence as we have heard it, and you must decide what the evidence is. It seems to me that one could hardly say that a provocation was caused by someone who was being robbed, if you find that so.

"If, on the other hand, you find that there was a provocation not associated with the robbery in any wise, you could find the defendant guilty of voluntary manslaughter." (Footnote added)

Upon completion of the supplemental charge, defense counsel objected, out of the hearing of the jury, to the trial court's remark that "the crime of voluntary manslaughter would not be an appropriate verdict in this case." The objection was overruled. It is renewed on this appeal on the theory that the comment was an improper expression of opinion by the trial judge which denied Bennett a fair trial. We do not agree.

The basis of the trial court's view that a verdict of voluntary manslaughter would not be "appropriate" in this case was that there was no evidence to support such a

voluntary manslaughter is involved. You have that power, however, and I so instruct you." The judge had earlier also charged that the jury "may find the defendant guilty or not guilty of voluntary manslaughter," and again had stated, "[i]t is a possible verdict which you may return."

verdict; all of the evidence having shown that the killing took place in the course of a robbery, the killing was, by definition, a felony-murder.[4] In two recent cases we have been presented with the question whether a trial judge may indicate to a jury his opinion as to the insufficiency of the evidence to support a verdict of voluntary manslaughter when the evidence is in fact insufficient. In both cases we held that under the facts there present the expression of such an opinion was not error. *Commonwealth v. Rivera*, 470 Pa. 131, 367 A.2d 719 (1976); *Commonwealth v. Gaddy*, 468 Pa. 303, 318, 362 A.2d 217, 224–225 (1976).[5]

From those cases it is clear that two principal conditions must be met before such an expression of opinion may properly be included in a charge: (1) the trial court must fully inform the jury of its "power" to return a verdict of voluntary manslaughter, whether supported by evidence or not; and (2) the court must also instruct the jury that it is not bound by the court's comments concerning the evidence because it is the jury which is the sole finder of the facts. Both of these re-

---

4. Appellant does not argue that the fault in making the statement was that there was, in fact, evidence which would have supported a verdict of voluntary manslaughter. Had this argument been made it would not succeed in this case. Our review of the evidence fully confirms the trial court's opinion that evidence of passion and provocation was totally lacking. Cf. *Commonwealth v. McNeill*, 462 Pa. 438, 341 A.2d 463 (1975); *Commonwealth v. Bailey*, 450 Pa. 201, 299 A.2d 298 (1973).

5. As we noted in *Commonwealth v. Gaddy*, 468 Pa. at 318–319, n. 15, 362 A.2d at 224, n. 15, at the time of the trial in this case, (February, 1974) the trial judge was not required to charge on voluntary manslaughter if in his view no evidence existed in the record which would support such a verdict.

   See, e. g., *Commonwealth v. Matthews*, 446 Pa. 65, 285 A.2d 510 (1971). In *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142 (1974), cert. denied, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974), a majority of this Court, although for different reasons, held that a defendant, upon request, was entitled to a charge on voluntary manslaughter even absent such evidence. See also *U. S. ex rel. Matthews v. Johnson*, 503 F.2d 339 (3d Cir. 1974), cert. denied sub nom., *Cuyler v. Matthews*, 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975).

quirements were explicitly met in this case, and we find no error in the court's charge in this regard. See *Commonwealth v. Russell*, 456 Pa. 559, 322 A.2d 127 (1974); *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974).[6]

Judgments of sentence affirmed.

NIX, J., concurs in the result.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joins.

ROBERTS, Justice, dissenting.

Appellant contends that the trial court impermissibly expressed its opinion to the jury that voluntary manslaughter was an inappropriate verdict. The majority characterizes the trial court's comments as an expression of its opinion that there was no evidence of voluntary manslaughter. The majority holds that this was not error because the trial court fully informed the jury of its power to return a verdict of voluntary manslaughter, whether supported by evidence or not, and instructed the jury that it was not bound by the court's comments on the evidence. I cannot agree with the majority's characterization of the trial court's comments. The trial court did not merely state that in its opinion, there was no evidence of voluntary manslaughter. Rather, the trial court instructed the jury that in its opinion voluntary manslaughter was an "inappropriate verdict," a comment directed not merely to the evidence to be considered by the jury, but to a verdict which the trial court implied the jury should not return. This direction exceeded the permissible bounds of judicial comment and improperly im-

6. The appellant also contends that the trial court erred in its charge because it summarized the evidence to his detriment. Appellant took no objection to the trial court's action and thus has not properly preserved this issue for appellate review. Pa.R.Cr.P. 1119(b); *Commonwealth v. Dukes*, 460 Pa. 180, 331 A.2d 478, 483 (1975).

pinged upon the sole province of the jury. The trial court's instructions that the jury had the power to return a verdict of voluntary manslaughter and that the jury was not bound by the trial court's comments on the evidence were not sufficient to cure the prejudice of the challenged jury instructions.

The trial court's expression of its opinion as to the degree of appellant's guilt thus deprived him of a fair trial. I would reverse the judgment of sentence of murder of the first degree and remand for a new trial.

In its charge to the jury the trial court included complete definitions of murder of the first and second degree and voluntary manslaughter. After three hours of deliberation, the jury returned to the courtroom and requested that the definitions be repeated. The court, after repeating the definitions of murder and voluntary manslaughter, volunteered the following comments:

"I have told you earlier that it is in your power to find that a defendant is guilty of voluntary manslaughter, under these circumstances. And it is within your power to do that.

"But, it is my opinion, under the circumstances— and I give you my opinion. There's no binding effect upon you. But, under the circumstances, the crime of voluntary manslaughter would not be an appropriate verdict in this case. Because, there is no evidence, as I recall it, that there was any scene between the deceased and the person who shot him, that would argue a provocation, that a person would be transported out of their mind and kill him.

"If there was anything that happened here—and you must determine that under the evidence as we have heard it, and you must decide what the evidence is. It seems to me that one could hardly say that a provocation was caused by someone who was being robbed, if you find that so.

"If, on the other hand, you find that there was a provocation not associated with the robbery in any wise, you could find the defendant guilty of voluntary. manslaughter."

Appellant specifically objected to these remarks.

Contrary to the trial court's opinion, voluntary manslaughter would have been an appropriate verdict in this case. There are two reasons for permitting such a verdict under a murder indictment. First, voluntary manslaughter is by definition a lesser offense than murder and is included within a murder indictment. *Commonwealth v. Hoffman*, 439 Pa. 348, 266 A.2d 726 (1970); *Commonwealth v. Kellyon*, 278 Pa. 59, 122 A. 166, (1923). Both crimes are criminal homicide and the element which distinguishes them is the lack of malice in voluntary manslaughter. See *Commonwealth v. Butcher*, 451 Pa. 359, 364, 304 A.2d 150, 153 (1973).

Second, this Court has recognized that in every case of criminal homicide factors such as sympathy or extenuating circumstances may legitimately lead a jury to find a defendant guilty of voluntary manslaughter instead of murder. This is so even if the evidence suggests a verdict of guilty. *Commonwealth v. Hoffman, s*upra; see *Commonwealth v. Hill*, 444 Pa. 323, 327, 281 A.2d 859, 861 (1971).

Thus, although voluntary manslaughter is defined in terms of provocation, heat of passion and imperfect self-defense, the defendant has no burden to introduce such factors before a voluntary manslaughter verdict is permissible.[1] Voluntary manslaughter is an appropriate verdict whether or not the defendant presents a defense.

1. A voluntary manslaughter defense must be carefully distinguished from ordinary affirmative defenses. In the latter, although the defendant has no burden to show the defense is valid, some evidence must be presented which supports his claim before he is entitled to any instruction. See *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974). Here appellant is entitled to a voluntary manslaughter instruction because it is a lesser included of-

Although we have recognized the duty of the trial judge to aid the jury in understanding and clarifying the issues to be resolved, his charge should be a calm and dispassionate one, it must be a fair and impartial submission of the evidence. *Commonwealth v. Trunk*, 311 Pa. 555, 565–66, 167 A. 333, 337 (1933); see *Commonwealth v. Wilmer*, 434 Pa. 397, 254 A.2d 24 (1969). The jury depends on the trial judge for guidance and it will undoubtedly give great weight to any expressions of personal opinions that he makes. *Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972); *Commonwealth v. Myma*, 278 Pa. 505, 123 A. 486 (1924).[2] As the Supreme Court of the United States observed in *Bollenbach v. United States*, 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946):

> " 'The influence of the trial judge on the jury is necessarily and properly of great weight,' . . . and jurors are ever watchful of the words that fall from him. Particularly in a criminal trial, the judge's last word is apt to be the decisive word."

Thus, in order to preserve a defendant's right to a fair trial, the trial judge must be careful to remain absolutely impartial, and he must not invade the province of the jury in reaching its ultimate decision. *Commonwealth v. Archambault*, supra; *Commonwealth v. Myma*, supra.

The trial judge's instruction here, that voluntary manslaughter would be an inappropriate verdict, communi-

fense of murder, and appellant has no burden to present evidence of provocation or heat of passion.

2. Many commentators have noted the importance juries place on the opinions and attitudes of the trial judge. See, e. g., Conner, The Trial Judge, His Facial Expressions, Gestures and General Demeanor—Their Effect on the Administration of Justice, 6 Am. Crim.L.Q. 175, 176 (1968); Frankel, The Search for Truth: An Umpireal View, 123 U.Pa.L.Rev. 1031, 1041–45 (1975); O'Mara, Standard Jury Charges—Findings of Pilot Project, 43 Pa.Bar Ass'n Q. 166, 173 (1972). Frankel argues that the trial judge should be a "passive moderator" who should avoid "expressions of points of view." Frankel, supra at 1045.

cated to the jury that if it found that appellant committed the homicide, it should: (1) find that appellant acted maliciously and therefore committed murder; and (2) not exercise its power to lessen the crime to voluntary manslaughter because no extenuating circumstances existed to justify such action. This comment exceeds the permissible bounds of judicial comment and impermissibly impinges upon the exclusive province of the jury.

In *Archambault*, this Court, after considering the need for judicial impartiality, held that a trial judge must never express to the jury his personal view of guilt or innocence no matter how overwhelming the evidence of guilt. We stated:

"An expression by the judge that in his opinion the accused is guilty leaves an indelible imprint on the minds of the jury. The jury is undoubtedly going to attribute to the judge, because of his experience in criminal cases, special expertise in determining guilt or innocence. As Mr. Justice (later Chief Justice) Kephart stated for this Court: 'The judge occupies an exalted and dignified position; he is the one person whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box. . . . To depart from the clear line of duty through questions, expressions or conduct, contravenes the orderly administration of justice. It has the tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence.' [*Commonwealth v. Myma*, 278 Pa. 505, 508, 123 A. 486, 487 (1924).]"

448 Pa. at 95, 290 A.2d at 75; see *Commonwealth v. Motley*, 448 Pa. 110, 289 A.2d 724 (1972); ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 5.6(a) (Approved Draft, 1972) ("The trial judge should not express or oth-

erwise indicate to the jury his personal opinion whether the defendant is guilty or express an opinion that certain testimony is worthy or unworthy of belief.").

These same considerations apply with equal force to trial judges' opinions concerning a defendant's degree of guilt. The jury's verdict necessarily includes not only a determination of guilt or innocence but also a determination of the degree of guilt if the defendant is found guilty. The latter decision is often as important as the former, particularly in murder cases. As Mr. Justice Powell, speaking for a unanimous Supreme Court, recently stated:

> "The safeguards of due process are not rendered unavailing simply because a determination may already have been reached that would stigmatize the defendant and that might lead to a significant impairment of personal liberty. The fact remains that the consequences resulting from a verdict of murder, as compared with a verdict of manslaughter differ significantly. Indeed, when viewed in terms of the potential difference in restrictions of personal liberty attendant to each conviction, the distinction . . . between murder and manslaughter may be of greater importance than the difference between guilt or innocence for many lesser crimes."

*Mullaney v. Wilbur*, 421 U.S. 684, 698, 95 S.Ct. 1881, 1889, 44 L.Ed.2d 508 (1975). Our constitutional system of trial by jury is founded upon the firm belief that the highest quality of criminal justice is achieved when the jury retains the sole power to determine both guilt or innocence and the degree of guilt if guilt is found.

Thus, because of his influence over the jury, an opinion by the trial judge that a voluntary manslaughter verdict is not appropriate effectively removes that potential verdict from the jury's deliberations and negates his pre-

vious instruction that a voluntary verdict is permissible.[3] This is a prohibited invasion of the province of the jury which denies appellant his constitutional right to a fair trial before an impartial jury. See *Commonwealth v. Archambault,* supra.[4]

This Court recently held that a judge's opinion that voluntary manslaughter is an inappropriate verdict re-

---

**3.** The trial judge's comments in response to appellant's objection after the jury returned to its deliberations show that he hoped his opinion would have this precise effect:

"I devoutly hope that the jury in this case looks up to this Court sufficiently that they will not return here today a totally inappropriate verdict, that would be an injustice to this defendant, by finding him guilty on some compromise charge which, in my mind, he's clearly not guilty of. And I certainly hope that they will not return a verdict, out of some passion of their own, as to deprive the Commonwealth of the verdict that they are entitled to, out of some injustice of their own."

In his opinion denying post-verdict motions the trial judge again stated his disagreement with the law of voluntary manslaughter:

"The uses of voluntary manslaughter in Pennsylvania are anomalous and were engrafted in the law in more innocent days, when the murder of fellow citizens still caused a sense of unease.

"It arose because visceral and whimsical juries convicted apparently unworthy defendants, of the lesser offense of voluntary manslaughter. Rather than accept total exculpation the courts allowed a verdict to stand, that under no stretch of the law or evidence fitted the definition of voluntary manslaughter.

"The Courts indulged themselves in the fallacy that because a jury may acquit a defendant for any reason they may convict for any reason. An ordered system of justice must, whenever possible, obviate the wild card. Voluntary manslaughter is a wild card whenever it is permitted to serve as a substitute . . . ."

**4.** In *Commonwealth v. Archambault,* 448 Pa. 90, 92, 290 A.2d 72, 73 (1972) we held that the trial court's comment that "it would be a miscarriage of justice to find [the] defendant not guilty" was improper even though it might arguably aid the jury in its deliberations. However helpful the judge's comments may be, he may not express his opinion concerning the guilt or degree of guilt of the defendant, decisions which must be left to the jury.

Similarly, the instruction in this case that "voluntary manslaughter would not be an appropriate verdict" amounts to an effort to obtain from the jury a verdict in harmony with the trial judge's opinion. It constituted an expression of opinion on an issue that should have been left for the jury. See ABA Project on Standards for Criminal Justice. Standards Relating to the Function of the Trail Judge § 5.6(a) (Approved Draft, 1972).

quires reversal of the judgment of sentence at least when appellant has presented evidence of provocation. *Commonwealth v. Bailey,* 450 Pa. 201, 299 A.2d 298 (1973). See also *Commonwealth v. Goins,* 457 Pa. 594, 321 A.2d 913 (1974) (plurality opinion of Mr. Justice Nix and concurring opinion of this writer). To prohibit trial judge opinions concerning a defendant's degree of guilt when he has presented evidence of provocation or mitigation but to allow such comments when as here, he chooses not to present a defense is tantamount to permitting a trial judge to comment on a defendant's failure to rebut the Commonwealth's evidence. This Court has disapproved such comments. See *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973).[5]

The United States Court of Appeals for the Third Circuit in *United States ex rel. Matthews v. Johnson,* 503 F.2d 339 (3d Cir. 1974), cert. denied, 420 U.S. 952, 95 S. Ct. 1336, 43 L.Ed.2d 430 (1975), held that due process requires that voluntary manslaughter instructions be given, if requested by the defense, in every murder trial:

"To hold otherwise is to expose a defendant to the idiosyncracies of the trial judge to whom the case has been

---

5. The majority's reliance on *Commonwealth v. Rivera,* 470 Pa. 131, 367 A.2d 719 (1976) and *Commonwealth v. Gaddy,* 468 Pa. 303, 362 A.2d 217, 224–25 (1976) is misplaced. In *Gaddy,* the trial court stated that it did not "see any of those facts [of voluntary manslaughter] in this case at all." The trial court's comment went to the evidence which the jury could consider, not to the verdict which they could return. In *Rivera,* the trial court instructed the jury that in its opinion "The crime of voluntary manslaughter was not involved in this case." I adhere to the view expressed by Mr. Justice Manderino in his dissenting opinion in *Rivera* that this comment exceeded the permissible bounds of judicial comment. Assuming, however, that the comment in *Rivera* was proper, it is distinguishable from the trial court's expression of opinion here. Unlike the court in *Rivera,* the trial court here did not merely state that it did not think that voluntary manslaughter was involved, but asserted that it would be "inappropriate" for the jury to return a voluntary manslaughter verdict. Thus, there is an even greater likelihood than in *Rivera* that the jury would think that it was wrong to return a verdict of voluntary manslaughter.

assigned, or the 'whim and caprice' of a given judge on a given day."

503 F.2d at 346.

It would indeed be anomalous to require the trial judge to give an instruction that voluntary manslaughter is a permissible verdict but to allow him to state to the jury that despite the instruction a voluntary manslaughter verdict would "not be an appropriate verdict." This amounts to a statement that the voluntary manslaughter instruction ought to be ignored. The same vice which the federal court attempted to eliminate would remain. A defendant's right to have the jury consider a voluntary manslaughter verdict would be subject to the "whim and caprice" of individual judges.[6]

The majority concludes that the trial judge's cautionary instructions that the jury has the power to ignore his opinion and to return a voluntary manslaughter verdict vitiates the prejudicial effect of his opinion. I cannot agree. Because of the weight the jury inevitably places on the judge's opinion, its impact precludes a finding beyond a reasonable doubt that it had no influence on the jury's verdict. See *Commonwealth v. Archambault,* supra; cf. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973).

I would reverse the judgment of sentence and grant a new trial.

MANDERINO, J., joins in this dissenting opinion.

6. The majority's reliance on *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974), is unwarranted. There, the trial judge commented that, assuming the jury found that appellant maliciously killed decedent, he could not recall any evidence of extenuating circumstances to reduce the crime to voluntary manslaughter. However, he stated that voluntary manslaughter was an "entirely permissible verdict" and "did not . . . suggest that the jury return any particular verdict." Id. at 319, 314 A.2d at 251. These comments on the evidence did not amount to an opinion that voluntary manslaughter was not an appropriate verdict, which effectively removed that possible verdict from the jury's deliberation.