367 A.2d 719

**COMMONWEALTH of Pennsylvania**

v.

**Miguel RIVERA, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Nov. 20, 1975.

Decided Nov. 24, 1976.

Rehearing Denied Jan. 26, 1977.

132

Robert F. Simone, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Frank De-Simone, Asst. Dist. Atty., Carolyn E. Temin, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Miguel Rivera, the appellant was convicted by a jury of the offenses of murder of the first degree, rape and conspiracy. After the denial of his post-verdict motions, appellant was sentenced to life imprisonment on the murder charge and to a concurrent ten to twenty year imprisonment for rape. Sentence on the conspiracy conviction was suspended. This appeal followed.[1]

The Commonwealth's evidence at trial was that Rivera was one of six men in the early morning hours of June 27, 1973 who participated in the rape of a young girl and the drowning of her boyfriend in the reflecting pool in front of the Philadelphia Art Museum. It is not neces-

---

1. The appeal of the judgment of sentence for murder was taken directly to this Court pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, Art. II, sec. 202, 17 P.S. § 211.202 (Supp.1975–76). The appeal of the judgment of sentence for rape was certified to this Court by the Superior Court because the two crimes were related.

sary that we recount here the sordid details of these re-
volting crimes; suffice it to say that after reviewing the
record,[2] we are satisfied that the evidence was sufficient
to permit the jury to conclude beyond a reasonable doubt
that appellant was a participant in the rape and murder.
We thus proceed to consider the assignments of error
made by appellant in support of his prayer for a new
trial. Finding them to be without merit, we will affirm.

Appellant first contends that the trial court erred in
failing to grant a motion for a mistrial. The motion
came during the course of the re-direct examination of
the principal Commonwealth witness, appellant's co-de-
fendant, Juan Garcia. On cross-examination, defense
counsel had attempted to impeach the credibility of Gar-
cia by questioning him about inconsistencies in various
statements he had given to the police concerning the
crimes. In an apparent attempt to rehabilitate Garcia,
the assistant district attorney began to read from one of
those statements.[3]

> " 'About three days after the incident in the park I
> ran into this guy Mike [the defendant] whom I know
> at 17th & Greene.' Now, this is the statement that I
> am referring to that you gave at 7:15 a. m. on the
> morning of July 7. Now I'm quoting the words from
> the statement. 'He is a junkie . . .' "

Defense counsel objected at this point and moved for a
mistrial. The objection was overruled and the motion
denied. Appellant asserts that reference to him as a
"junkie" was improper and prejudicial because it permit-
ted the jury to infer that he had previously been involved
in criminal activity of some sort.

■ The general and well-known rule is that "the
prosecution may not introduce evidence of the defend-

2. Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187.

3. The statements had been marked as exhibits previously and
were later introduced into evidence.

ant's prior criminal conduct as substantive evidence of his guilt of the present charge." [4] *Commonwealth v. Allen,* 448 Pa. 177, 181, 292 A.2d 373, 375 (1972) (footnote omitted). See also *Commonwealth v. Fortune,* 464 Pa. 367, 346 A.2d 783 (1975) and cases cited therein.

A "junkie", according to the dictionary, is "a drug addict, esp. one addicted to heroin." The Random House Dictionary of the English Language (Coll.Ed.1968). In street argot, the word simply denotes a regular user of drugs. The parties do not disagree on this point, and for purposes of this opinion we will assume that the jury understood the word to have this meaning. The question is whether drug use connotes prior criminal activity by the user.

■■ By itself drug use, even habitual use, is not a crime in this State. Our statute law [5] prohibits the unauthorized manufacture, possession, sale and distribution of controlled substances such as heroin and marijuana. The mere use of such drugs, however, is not an offense under the law,[6] nor may the mere status of drug addiction be constitutionally punished as a criminal offense. *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L. Ed.2d 758 (1962). This is not conclusive, however, of whether the idea of criminal conduct by a defendant would be conveyed to a jury when the defendant is identified as a person who uses drugs.

**4.** There are, of course, exceptions to this rule, as for example when the evidence of the other crime is sought to be admitted to prove a common design or scheme, or to establish intent or motive. *See* McCormick, Evidence, § 190 at 448–451 (Clearly ed. 1972) for a complete listing of the exceptions. The Commonwealth does not argue that any of these exceptions is applicable here.

**5.** The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 1, *et seq.,* as amended, 35 P. S. § 780–101 *et seq.*

**6.** *Cf.* section 4 of the Drug, Device and Cosmetic Act, Act of September 26, 1961, P.L. 1664, § 4, *as amended,* 35 P.S. § 780–4(*r*), repealed, Act of April 14, 1972, P.L. 233, No. 64, § 43.

The Superior Court was faced with a similar question in the case of *Commonwealth v. Quarles*, 230 Pa.Super. 231, 326 A.2d 640 (1974). In *Quarles*, as here, it was claimed that the reference to the use of drugs improperly permitted the jury to infer that the defendant had engaged in criminal activities other than those for which he was being tried. In that case, between the date of the crime and the time of trial the physical appearance of the defendant had changed in several respects, with the result that an eyewitness to the crime was unsure of his identification of the defendant at trial. In order to bolster the identification testimony, the Commonwealth called to the stand the arresting officer, who testified that appellant's hairstyle had been altered and that his general physical condition had improved. Asked by the trial judge for an explanation of the change in the defendant's appearance, the detective replied, "[a]t the time [of the incident] he was dependent on narcotics very heavily and his condition had deteriorated. He had scabs on his arms which don't appear to be there now."

Noting that this was an issue of first impression in Pennsylvania, the Court in *Quarles* stated that such testimony "cannot be said to raise an inference, as a matter of law, that addiction to narcotics is evidence of prior criminal conduct." *Id.* at 234, 326 A.2d at 641.[7] We agree and therefore decline to hold that any reference to the possibility of a defendant's addiction to or use of narcotics is so prejudicial as to warrant a new trial. As we said in *Commonwealth v. Allen, supra,* where identification had been made from a police photo-

7. In one sense this statement can be viewed as dictum because the issue had not been properly preserved for appeal purposes. The trial in *Quarles,* however, had predated our decision in *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974) abolishing the "doctrine of basic and fundamental error" in criminal cases, and the Superior Court's statement was made in the course of its consideration of the applicability of that doctrine to the error complained of. The Court concluded that the alleged error was not basic and fundamental.

graph, "[a] mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference . . ." 448 Pa. at 181, 292 A.2d at 375. See also *Commonwealth v. Carlos*, 462 Pa. 262, 341 A.2d 71 (1975); *Commonwealth v. Groce*, 452 Pa. 15, 303 A.2d 917 (1973). We believe that like considerations obtained in the present case in regard to the simple, unadorned statement by a witness that the defendant was a "junkie".

To infer prior criminal activity on the part of Rivera from the challenged reference, the jury would have to conjecture that a drug user is prone to commit crimes in order to support his drug habit. Whatever basis in fact such a supposition may have as a general proposition, see and compare *Commonwealth v. Williams*, 230 Pa.Super. 72, 327 A.2d 367 (1974), we are unwilling to conclude that the possibility of a speculation so attenuated and in no way related to this appellant is, by itself, sufficiently prejudicial to warrant the granting of a new trial.

Additional reasons are present in this case to support our conclusion. The word "junkie" was mentioned only a single time [8] (the assistant district attorney later stated that his reading of it had been inadvertent). Moreover, the fact that appellant did use drugs had been brought to the jury's attention before Juan Garcia's statement was read to them. On both direct and cross-examination Garcia had testified without objection that he had observed Miguel Rivera, among others, smoking marihuana immediately before the rape and murder.

8. At the close of all the evidence the assistant district attorney requested that the trial judge give the jury a cautionary instruction to the effect that any reference to the use of drugs by the defendant was not to be considered by them in determining his guilt or innocence. While the trial judge expressed his willingness so to charge, defense counsel rejected the offer on the ground that such a statement at that stage of the proceeding would only serve to call the jury's attention to the drug factor.

The use of the term "junkie" therefore, could have been thought by the jury (and was in fact so thought by the judge) to refer to appellant's use of marihuana, a fact already in evidence.

■■ While we find no prejudice and hence no error in the case at bar, we take this opportunity to observe that evidence of drug use, like evidence of any other bad habit of a defendant, should be avoided except when directly relevant to an issue before the fact-finder. See *Commonwealth v. Quarles, supra,* 230 Pa.Super. at 235–36, 326 A.2d 640; McCormick, Law of Evid., 99, § 45 (1954).[9]

■ Two assignments of error in the trial court's charge to the jury remain to be considered: Rivera claims, first, that the Court erred in stating to the jury that in his opinion "the crime of voluntary manslaughter was not involved in this case." It is contended that this expression of opinion on the part of the Court rendered illusory appellant's right to a charge on voluntary manslaughter. We do not agree.

Only recently, in the case of *Commonwealth v. Gaddy,* 468 Pa. 303, 362 A.2d 217 (1976) we reiterated the rule that, under certain carefully circumscribed conditions, it is not error for a trial court to comment as to whether there is any evidence to support a verdict of voluntary manslaughter. Those conditions were met here. First, the judge stated his opinion only after he had first fully instructed the jury concerning the elements of voluntary manslaughter and told them that it was a permis-

9. Appellant also argues that the "junkie" reference in the Garcia statement was reversible error because its introduction into the case by the assistant district attorney constituted prosecutorial misconduct. If, as we have held, the word was not prejudicial, it is difficult to see how its introduction could amount to misconduct. However that may be, the reason now advanced was not the basis for the objection in the trial court, and will not be considered for the first time on appeal. *Commonwealth v. Reid,* 458 Pa. 357, 326 A.2d 267 (1974) and cases cited therein.

sible verdict. Second, immediately after making the comment now objected to, the judge made it clear to the jury that they were not bound by his opinion and repeated that they had the "power" to return with a verdict of voluntary manslaughter.[10] Under these circumstances we find no error in the court's statement. See *Commonwealth v. Russell*, 459 Pa. 1, 326 A.2d 303, 308 (1974); *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974).

 Appellant's other objection to the charge is that the court expressed its personal opinion as to Rivera's guilt. This objection was not made at trial, however, and consideration of it on appeal is precluded. Pa.R.Cr. P. 1119(b); *Commonwealth v. Dukes*, 460 Pa. 180, 331 A.2d 478, 483 (1975). This is so notwithstanding that the point, although not included in the new trial motion, was apparently advanced at argument on that motion.

Judgments of sentence affirmed.

EAGEN, O'BRIEN and NIX, JJ., concur in the result.

MANDERINO, J., filed a dissenting opinion in which ROBERTS, J., joins.

JONES, C. J., did not participate in the consideration or decision of this case.

MANDERINO, Justice (dissenting).

I dissent. The majority asserts that because drug use is not a crime, to infer that appellant engaged in prior criminal activity from the remark naming appellant as a "junkie," "the jury would have to conjecture that a drug

10. The court charged:
 "But you have the power, which is within your power, reserved to you, to determine whether or not the defendant is guilty of voluntary manslaughter. So I make that as clear as I can."

user is prone to commit crimes in order to support his habit." The fallacy of this argument is twofold. Although correct in its assertion that *use* of the drug heroin is not in itself a crime, the majority overlooks the fact that to use heroin, one must "possess" it, and possession of heroin is a crime in this Commonwealth. See The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 1, *et seq.,* as amended, 35 P.S. § 780–101 *et seq.* The Jury therefore need not speculate at all; they simply need to draw the conclusion obvious to all but the majority, that one who "uses" heroin has committed the criminal act of "possessing" heroin. Such reference to prior criminal activity is prohibited, and its admission into evidence at appellant's trial constituted reversible error.

The majority's logic also misses the mark by concluding that the possibility of the jury assuming that a heroin addict is more likely to commit a crime is too "attenuated" to require reversal. I believe that the likelihood of such speculation by the jury is quite high—regardless of the "basis in fact such a supposition may have as a general proposition"—and this likelihood of prejudice is in itself sufficient to warrant the grant of a new trial.

Moreover, the unobjected-to reference regarding appellant's alleged use of marjuana in no way justifies referring to him as being a "junkie". The foundation of the majority's conclusion is its misconception of the meaning of the word "junkie". The word is derived from "junk", a synonym for heroin. A "junkie", therefore, is one who regularly uses "junk", i. e., heroin. As commonly understood, however, the work connotes much more. The name itself frequently conjures up images of the popular stereotype of the heroin addict, namely, a lost soul, physically and mentally deteriorating from dependence upon drugs, who manages to survive only by stealing enough to support a drug addiction costing perhaps hundreds of dollars a day. Such an image is likely to be implanted in

the collective mind of the jury by the objectionable re-mark. Marijuana possession, on the other hand, has come to enjoy substantial acceptance, or tolerance at least, despite its continuing illegal status. The average juror is far more likely to ignore, or excuse, marijuana possession, while at the same time strongly condemning heroin use.

Additionally, I must express my dissent to the majority's approval of the trial court's statement that, in its opinion "the crime of voluntary manslaughter was not involved in this case." The unavoidable effect of such a statement is to direct a verdict as to the voluntary man-slaughter issue. The trial court's statement, made in response to defense objections, that the jury had the "power" to return a voluntary manslaughter verdict despite the trial court's opinion, adds to rather than reduces the prejudicial effect of the initial remark. The clear impression left by the exchange between the judge and defense counsel is that the jury would be *wrong* if it returned a voluntary manslaughter verdict. Such comment by the trial judge has been condemned by the court since *Commonwealth v. Archambault,* 448 Pa. 90, 290 A. 2d 72 (1972)

ROBERTS, J., joins in this dissenting opinion.