425 A.2d 777

**COMMONWEALTH of Pennsylvania**

v.

**Abdul A. BEY, Appellant.**

Superior Court of Pennsylvania.

Submitted March 21, 1980.

Filed Feb. 6, 1981.

Petition for Allowance of Appeal Denied June 12, 1981.

Vincent M. Lorusso, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, WICKERSHAM and LIPEZ, JJ.

HESTER, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County. The procedural history and facts relevant to the issues on appeal are as follows:

On November 17, 1977 at 11:15 p. m. the police discovered the body of a black male lying in an alley between 3302–

3304 North Broad Street in Philadelphia. The victim, Ronald Tilghman, sustained a gunshot wound to the head and was dead when the police arrived. His personal effects were strewn about his body and his pockets were turned out. The police observed blood and water stains on the common steps of 3300–02 North Broad Street. They also noticed blood on the wall and the steps leading to the second floor of the same building. The police proceeded to the second floor apartment and knocked on the door. Appellant answered and stated, "I shot my friend—it was an accident." More blood stains were observed inside his apartment.

Appellant informed the police that the .357 Magnum Smith and Wesson revolver and holster were in the dresser in the bedroom. Also recovered were five live and one spent .357 caliber shells.

Appellant testified at trial that he knew the decedent for two years prior to the shooting. He was exhibiting the gun to the decedent, and while manipulating the action, it accidentally discharged. He did not realize the gun was loaded and couldn't explain how it discharged. Appellant stated that he panicked, removed the body, and attempted to wash away the blood. Expert testimony at trial also indicated that because of built in safety features this gun could only be discharged by pulling the trigger with a finger while the action was manipulated. The gun would not discharge without pressure on the trigger.

During the trial, Officer Charles Holmes was asked to describe the layout of appellant's apartment wherein the following exchange took place:

"(Assistant District Attorney) Mr. Scott: The bedroom was to the rear of that?

Officer Holmes: Right. There was a lot of stuff over the counter as I remember. I think there was a bag of syringes I noticed on the dresser."

Appellant's counsel did not object to this testimony.

The Commonwealth later offered photographs depicting the interior, exterior, and curtilage of appellant's apartment.

Twelve of the photographs depicted areas inside the apartment. One of them, Commonwealth's Exhibit C–16 displayed among other things, a bag of hypodermic syringes. Appellant's counsel objected to the introduction of this exhibit and the objection was overruled by the trial court.

Finally, during cross-examination of the appellant, the assistant district attorney inquired as to whether appellant took medication on a daily basis on the day of the shooting. Appellant replied that valium had been prescribed, but that he didn't like to take it. The following ensued:

"(Assistant District Attorney) Mr. Scott: Valium pills, capsules?

Mr. Bey: Pills.

Mr. Scott: Did you ever have to inject yourself:

Mr. Bey: No, Sir.

Mr. Scott: Photographs, please."

Defense Counsel then objected at side bar. The Commonwealth later withdrew the question without further inquiry. No further motions were made by appellant's counsel.

Appellant was subsequently convicted by the jury of involuntary manslaughter and possession of an instrument of crime. After post trial motions were denied, appellant was sentenced to 2½ to 5 years on each offense to run consecutively. This timely appeal followed.

Appellant contends that the jury was permitted to consider unrelated criminal activity because of error on the part of the trial court and because trial counsel rendered ineffective assistance.

Our Supreme Court has held that the test is whether the testimony conveys either expressly or by reasonable implication the fact of a prior offense. *Commonwealth v. Povish*, 479 Pa. 179, 387 A.2d 1282 (1978).

We have also held that appropriate cautionary instructions may sometimes be adequate to cure any prejudice caused by such testimony. *Commonwealth v. Povish*, supra; *Commonwealth v. Williams*, 470 Pa. 172, 368 A.2d 249 (1975). We note the facts herein indicate more than a mere passing

reference to a defendant as a "junkie" as occurred in *Commonwealth v. Rivera*, 470 Pa. 131, 367 A.2d 719 (1976).

■ We note that Officer Holmes' testimony, even in conjunction with the photograph, does not indicate that appellant was involved in prior criminal activity. There are many lawful purposes for hypodermic syringes. However, the jury could reasonably infer prior criminal activity from the appellant's testimony on cross-examination in conjunction with the prior testimony of Officer Holmes and the photograph. *Commonwealth v. DeCampli*, 243 Pa.Super. 69, 364 A.2d 454 (1976). This testimony was also irrelevant. See, *Commonwealth v. Rivera*, supra. The objection to that testimony was not ruled upon by the trial court because the Commonwealth withdrew any further questions. There was, therefore, no error on the part of the trial court.

■ On a claim of ineffective assistance of counsel, our Supreme Court has held that our inquiry ceases whenever there is a finding that counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

We are unable to ascertain from the record why trial counsel failed to request cautionary instructions and or a move for mistrial after the cross-examination of appellant had indicated the syringes were not for use with lawfully prescribed medication. The testimony was obviously irrelevant and highly prejudicial, particularly where appellant's credibility was of such major importance to his entire defense.

We therefore vacate the judgment of sentence and remand the case to the trial court for an evidentiary hearing to determine whether trial counsel's failure to make the appropriate motions had any reasonable basis designed to effectuate appellant's interests. If trial counsel's actions had any reasonable basis designed to effectuate appellant's

interests, the judgment of sentence should be reinstated. If not, a new trial should be granted.

Judgment of sentence vacated and case remanded.

WICKERSHAM, J., files a dissenting opinion.

WICKERSHAM, Judge, dissenting:

On November 17, 1977, Ronald Tilghman was shot to death by defendant Abdul Bey in defendant's apartment at 3300 North Broad Street. The cause of death was a single shot to the head from defendant's .357 magnum revolver. After shooting Tilghman, the defendant dragged the victim's body out of his apartment, down a full flight of stairs, over a concrete railing, down a neighbor's outside steps, and down the sidewalk into an adjoining alley. At that point, the defendant attempted to remove all traces of blood by washing his carpet and the stairs where he had dragged the victim. The defendant returned to his apartment and threw a bucket of water on his neighbor's steps in order to remove signs of blood from that area. Thereafter, the defendant removed his clothing and shoes, washed them, and hung them in his bathtub to dry.

Shortly thereafter, police arrived on the scene and found the victim's still-bleeding body in the alley. They followed the water and traces of blood to the defendant's apartment. The officers knocked on the door, identified themselves, and asked if anything had happened that night. Defendant replied, "Yes, I shot my friend. It was an accident." Defendant then led the police into his bedroom and informed them that the gun he had used was in his third dresser drawer. The police retrieved the weapon from that drawer and also seized one spent and five live .357 caliber shells from atop his dresser.

Appellant contends that the jury was permitted to consider unrelated criminal activity because of error on the part of the trial court and because trial counsel rendered ineffective assistance. Specifically appellant points to the trial testimony of Officer Charles Holmes who, in describing the

216

layout of appellant's apartment, mentioned that "there was a bag of syringes I noticed on the dresser." Appellant's trial counsel made no objections to this testimony. Later the Commonwealth introduced photographs of the apartment, one of which displayed inter alia a bag of hypodermic syringes. Appellant's counsel objected to the introduction of the photographic exhibit which objection was overruled.

The majority of our panel have voted to vacate the judgment of sentence and remand the case to the trial court for an evidentiary hearing to determine whether trial counsel's failure to make appropriate motions had any reasonable basis designed to effectuate appellant's interests.

I dissent.

I do not agree, as the majority finds, that the testimony of Officer Holmes relating to syringes on the dresser was "highly prejudicial."

In *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972) our highest court explicitly rejected the suggestion that every reference potentially linking a defendant with prior criminality is so prejudicial that reversal must apply. Nothing in the instant case connected the defendant-appellant to personal drug addiction, illicit drug use or illegal criminal drug activity. The evidence of guilt in this case was overwhelming. The complained-of evidence could not reasonably have contributed to defendant's conviction and was therefore harmless error at best. *Commonwealth v. Jackson*, 263 Pa.Super. 183, 397 A.2d 807 (1979).

Since I would find that the brief testimonial reference to the syringes and photograph were not improperly admitted, trial counsel could not be deemed ineffective for not preserving an objection to these events. To the contrary, I would find that it was good trial strategy and reasonable for trial counsel to remain silent as he did. *Commonwealth v. Rivera*, 470 Pa. 131, 367 A.2d 719 (1977).

The evidence was sufficient to support a verdict of murder in the first degree. The jury returned a verdict of involun-

tary manslaughter. I would affirm the judgment of sentence.[1]

1. If we insist that the object of review is to eliminate the possibility of mistake, we condemn ourselves to endless litigation that can never produce finality of judgment. The issue was well put by Justice Jackson of the United States Supreme Court in 1953:

> Whenever decisions of one court are reviewed by another, a percentage of them are reversed. That reflects a difference in outlook normally found between personnel comprising different courts. However, reversal by a higher court is not proof that justice is thereby better done. There is no doubt that if there were a super-Supreme Court, a substantial proportion of our reversals of state courts would also be reversed. We are not final because we are infallible, but we are infallible only because we are final.

The Price of Perfect Justice by Macklin Fleming page 21.