454 A.2d 576

**COMMONWEALTH of Pennsylvania**

v.

**Albert SCHOELLHAMMER, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 22, 1982.

Filed Dec. 23, 1982.

Petition for Allowance of Appeal Denied March 28, 1983.

Leigh P. Narducci, Norristown, for appellant.

Ronald Thomas Williamson, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before CAVANAUGH, McEWEN and HOFFMAN, JJ.

McEWEN, Judge:

We here consider an appeal from the judgment of sentence imposed in the Common Pleas Court of Montgomery

County after appellant was convicted by a jury of arson endangering property intentionally, arson endangering property recklessly and recklessly endangering another person. Appellant was sentenced to a term of imprisonment of from five to fifty-nine months and to make restitution in the amount of $7,500.00 upon the arson convictions. Sentence was suspended for the offense of recklessly endangering another person. We affirm.

The facts of this case were carefully delineated by the distinguished Montgomery County Common Pleas Court Judge William W. Vogel in his opinion and order entered upon the motions of appellant for a new trial and in arrest of judgment:

On December 15, 1979, at approximately 4:30 A.M., the garage situated on the premises of Catherine Baker at 638 S. York Road was substantially destroyed by fire. Based upon a determination that the fire was of suspicious origin, assistance from an arson detection expert from the State Police was requested. Trooper Walter B. Kerr investigated the scene on December 17, 1979 and determined that the fire was not a result of accidental factors and was, in fact, incendiary. As a result of that determination, an extensive investigation was launched. The defendant, who had been observed at the scene of the fire, was contacted by Detective Richard Tidwell of the Upper Moreland Township Police Department and asked to come to the police station for an interview on January 3, 1980. On that date, prior to any questioning and pursuant to standard police procedure, the defendant was advised of his *Miranda* Warnings.[1] During the interview, the defendant accounted for his presence at the scene of the fire and denied responsibility for the blaze. Detective Tidwell then asked the defendant if he would submit to a polygraph examination, which he refused and the interview was terminated.

---

1. The defendant was shown a departmental rights form listing the *Miranda* "rights", *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which he signed in the presence of Detective Tidwell.

Later that same day, the defendant telephoned Detective Tidwell and indicated a new-found willingness to submit to the polygraph examination. An appointment was scheduled for January 4, 1980 at 9:00 a.m.

Prior to questioning on that date, the defendant was advised by Detective George Crowley that he was not obligated to answer questions. However, the defendant agreed and ultimately failed the examination. Thereafter, in a conversation with Detective Crowley, the defendant admitted setting the fire and, at Detective Crowley's suggestion, wrote and signed a letter of apology to the victim. He then returned home.

When Detective Tidwell was informed of the results of the polygraph, as well as the admission to Detective Crowley, an arrest warrant was issued for the defendant. The defendant was summoned to the station, informed that he was under arrest, advised of his rights, and questioned. Although the defendant repeatedly waivered between denying and admitting participation in the setting of the fire, he was nonetheless formally arrested and arraigned.

Appellant sets forth the following issues in the Statement of Questions Presented:

    I.   Did the trial judge err in failing to suppress defendant's statements given to Detective Crowley and thereafter to Officer Tidwell and Randolph?

    II.   Did the trial court err in admitting during the course of the trial several statements which alluded to prior criminal conduct and incidents of arson, and was the cumulative effect of these references prejudicial to the defendant?

    III.   Did the learned trial judge err in failing to declare a mistrial upon witness Duddy's statement that the defendant appeared drunk or high?

    IV.   Did the learned trial judge err in admitting defendant's statements having determined that a corpus delecti for arson had been established?

V. Did the learned trial judge err in refusing to admit into evidence testimony by witness Weiss concerning statements she overheard from other spectators at the scene?

Appellant first contends that "custodial interrogation included the questioning and the writing of the note which transpired following the submission of a polygraph test." The principal issue for study of this contention is whether the statements of the defendant were made at a time when he was entitled to be apprised of his *Miranda* rights. *Miranda, supra.* The thrust of that inquiry is to determine whether the statements of the defendant were the product of a "custodial interrogation." *Oregon v. Mathiason*, 429 U.S. 492, 498, 97 S.Ct. 711, 715, 50 L.Ed.2d 714 (1977).

The *Miranda* court defined the term "custodial interrogation" to include "questioning by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda, supra* 384 U.S. at 444, 86 S.Ct. at 1612. Our venerable colleague, Judge J. Sydney Hoffman, provided a superb treatise upon the law of Pennsylvania with regard to this issue in *Commonwealth v. Anderson*, 253 Pa.Super. 334, 385 A.2d 365 (1978), which included an analysis of the leading Pennsylvania Supreme Court opinions of *Commonwealth v. Brown*, 473 Pa. 562, 375 A.2d 1260 (1977) and *Commonwealth v. McLaughlin*, 475 Pa. 97, 379 A.2d 1056 (1977). Judge Hoffman in *Anderson, supra,* provides the following synopsis of Pennsylvania law on this issue:

(1) The mere fact that a police investigation has focused on a particular person will not require *Miranda* warnings before police interviews with that person.

(2) If the police in fact place a person in custody or restrict his freedom in any significant way prior to, or during the interview, the interrogators must advise the person of his *Miranda* rights.

(3) A suspect may be in custody even if the police have not taken him to a police station or formally arrested him.

(4) Custodial interrogation occurs when a suspect is placed in a situation in which he reasonably believes that his freedom of action of movement is restricted by such interrogation.

■ The second and fourth theorems are to be distinguished for the reason that the second theorem focuses upon the actuality of what has occurred while the fourth focuses upon the perception of what has occurred. While Judge Hoffman ponders the failure of the Pennsylvania Supreme Court in *Commonwealth v. McLaughlin, supra,* to mention the reasonable belief test, he proceeds to establish a firm and solid foundation for his conclusion that the reasonable belief test is a valid and prevailing standard in Pennsylvania. The Pennsylvania Supreme Court in *Commonwealth v. Horner,* 497 Pa. 565, 442 A.2d 682 (1982) confirmed that conclusion of Judge Hoffman when it reiterated the rule that the test for custodial interrogation is whether the suspect is physically deprived of his freedom of action in any significant way *or* is placed in a situation in which he reasonably believes that his freedom is restricted by the interrogation.

■ It is also to be noted that mere focus on a subject is not automatically dispositive of custodial status, but the fact that the subject was the focus of the investigation is a relevant factor during consideration of the second and fourth theorems, namely: whether the freedom of the subject is restricted or the subject is in custody, *Commonwealth v. Simala,* 434 Pa. 219, 225, 252 A.2d 575, 578 (1969), and whether the subject could reasonably believe that his freedom of action of movement is restricted. *Commonwealth v. Meyer,* 488 Pa. 297, 412 A.2d 517 (1980); *Commonwealth v. Peters,* 473 Pa. 72, 373 A.2d 1055 (1977); *Commonwealth v. DiNicuola,* 448 Pa. 54, 292 A.2d 333 (1972); *Commonwealth v. Yount,* 435 Pa. 276, 256 A.2d 464 (1969), *cert. denied,* 397 U.S. 925, 90 S.Ct. 918, 25 L.Ed.2d 104 (1970); *Commonwealth v. Feldman,* 432 Pa. 428, 248 A.2d 1 (1968); *Commonwealth v. Jefferson,* 423 Pa. 541, 226 A.2d 765 (1967).

■ When we review the decision of the trial court, we must determine whether the factual findings are supported by the record. In making this determination, we consider only the evidence of the witnesses of the Commonwealth and so much evidence of the defense as, fairly read in the context of the record as the whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Johnson*, 467 Pa. 146, 151–152, 354 A.2d 886, 889 (1976).

The suppression court made the following finding in connection with this issue:

> The court determines there was no restrictions on his freedom to leave at that time, and while it's true that there was focus, he was a consideration, that he was not in "police custody" with regard to the taking of the polygraph examination which he had called up and asked to take.

■ Our review of the suppression hearing record convinces us that the suppression court correctly concluded that the statements of appellant were admissible. It is clear that appellant was a focus of the investigation at the time of the polygraph examination; however, without some further indicia of custody accompanying the administration of polygraph tests, *Miranda* warnings are not required. *Commonwealth v. Anderson, supra; Commonwealth v. McLaughlin, supra.* Hence, we must determine: (1) whether appellant was in custody or was actually restricted in some manner; or (2) whether appellant could have reasonably believed that his freedom of action of movement was restricted by the examination.

The record reveals that appellant transported himself to the police station and volunteered to submit to the polygraph exam. He was clearly informed that (1) the test was not mandatory, (2) the results of the test were inadmissible and could not be used for or against him in a court of law in establishing guilt or innocence, (3) refusal to take the test

could not be mentioned in court on any criminal charges which may have been lodged against him, (4) if in custody, a result showing that he was telling the truth would not require the police to release him, and (5) if informed that the results of the tests showed that he was not telling the truth, he had the right to remain silent and not say anything which could be used against him. In addition, the officer administering the polygraph test explained to appellant several times that he was free at any time to leave the examination.

The polygraph test was administered from approximately 9:00 a.m. until 10:35 a.m. on January 1, 1980. The examiner analyzed the charts and told appellant that he failed the examination and that in the opinion of the examiner appellant set the fire. The officer asked appellant if he wanted to talk about it and a few moments later appellant admitted to setting the fire. Shortly thereafter, appellant, at the suggestion of the officer, drafted the note admitting complicity in the crime. Appellant was free to leave the station at any time after he arrived there and, in fact, did leave the police station shortly thereafter without police escort.

Our study of the record leads us to conclude that the police did not place appellant in custody or restrict his freedom in any significant way and that appellant could not have had a reasonable belief that his freedom of action of movement was restricted in any significant way. Therefore, we find that the statements of appellant were not the product of a custodial interrogation and that the trial court, therefore, properly admitted the statements.

■ Appellant next contends that the cumulative effect of certain references to criminal conduct and incidents of arson so prejudiced appellant as to require the grant of a new trial—even though it was clear the references did not relate at all to appellant. In reviewing this contention, we adhere to the standard found in *Commonwealth v. Goosby*, 450 Pa. 609, 301 A.2d 673 (1973):

[a] new trial is granted when the remark is prejudicial; that is, when it is of such a nature or substance or

delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.

*Id.,* 450 Pa. at 611, 301 A.2d at 674. *See also Commonwealth v. Scarpino,* 494 Pa. 421, 431 A.2d 926 (1981); *Commonwealth v. Martin,* 461 Pa. 289, 336 A.2d 290 (1975).

Application of that standard compels the conclusion that this contention of appellant is without merit. The contested statements provide no reference to appellant and do not link appellant to any prior criminal conduct or other incidents of arson. Moreover, any possible prejudicial effect was removed by an immediate cautionary instruction to the jury. *Commonwealth v. Povish,* 479 Pa. 179, 189, 387 A.2d 1282, 1287 (1978); *Commonwealth v. Bey,* 284 Pa.Super. 210, 214, 425 A.2d 777, 779 (1981). Since we are satisfied, following a careful study of the record of the entire trial, that appellant received a fair and impartial trial and that the verdict resulting therefrom was a just one, we conclude the trial court properly rejected this contention of error.

■ Appellant proceeds to assert that a mistrial should have been declared because a witness characterized the appearance of appellant as "either drunk or high." We feel that this sole and inadvertent statement was insufficient to prejudice appellant by connecting him with drug addiction or alcoholism. The trial judge appropriately instructed the jury to disregard the characterization; therefore, the prejudice, if any, did not rise to a level which would mandate the declaration of a mistrial or the subsequent grant of a new trial.

We have thoroughly reviewed the entire record as well as the briefs of the parties and conclude that the distinguished Judge William W. Vogel has, in his able opinion, thoroughly analyzed and properly disposed of the remaining contentions.

Judgment of sentence affirmed.