**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PETER MCNEIL | : | |
| | : | |
| Appellant | : | No. 1577 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 2, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008397-2016

BEFORE:  PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED DECEMBER 07, 2020**

Peter McNeil appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas. McNeil contends the trial court abused its discretion in admitting evidence of his nickname, "Pistol Pete," and in denying his motions for a mistrial. After careful review, we affirm.

Philadelphia Police Officer Ryan McAdams was on routine patrol when he received a radio call directing him to a shooting on Edgemore Street in West Philadelphia. Upon his arrival, the officer found Christopher Palmer laying on the ground – barely conscious – with multiple gunshot wounds. A few blocks away another officer who was called to the scene found Darius Johnson fatally shot. Officer McAdams rushed Palmer to Penn Presbyterian Medical Center where Palmer received emergency life-saving medical treatment.

After securing the scene, police interviewed Hakeem Jenkins. In speaking with police, Jenkins explained how a dispute with a neighborhood acquaintance over a stolen wallet resulted in a fatal shooting.

Jenkins told police that a neighborhood acquaintance had stolen his wallet and some cash from him a few days before the shooting. That acquaintance, according to Jenkins, was known in the neighborhood as "Pistol Pete." A very short time after the theft Jenkins summoned "Pistol Pete" to Edgemore Street to settle the dispute. There, Jenkins, along with Palmer and Johnson, waited to confront "Pistol Pete" about the stolen wallet. However, by the time "Pistol Pete" arrived on Edgemore Street, Jenkins had gone inside a neighbor's home. Shortly thereafter, Jenkins watched from inside the neighbor's home as "Pistol Pete" fired several shots at Palmer and Johnson.

Following Jenkins's interview, the information about "Pistol Pete" was broadcast to police officers in the area of Edgemore Street. Shortly thereafter, one of the police officers recognized the nickname "Pistol Pete" and identified him as Peter McNeil. Police eventually arrested McNeil and charged him with multiple offenses including murder and attempted murder.[1]

Before trial, McNeil filed a motion *in limine* to exclude any reference to his nickname at trial. In his motion, McNeil averred that this particular

---

[1] Isiah Bradley was also charged in the case with shooting Palmer and Johnson. He was tried jointly with McNeil and was found not guilty on all charges.

evidence lacked probative value and was unduly prejudicial. The trial court denied McNeil's motion *in limine*, and McNeil proceeded to a jury trial.

At trial, the Commonwealth presented several witnesses, including Palmer, who testified about the events on Edgemore Street. The Commonwealth adduced testimony from Palmer about the dispute over Jenkins's stolen wallet and the shooting that occurred as a result of the theft. On cross-examination, McNeil sought to undermine Palmer's credibility. Admittedly, Palmer struggled to answer questions that were posed to him by McNeil on cross-examination. To explain Palmer's difficulty in answering questions, the Commonwealth on redirect elicited testimony from Palmer that he never testified in front of a jury and was a little nervous doing so. McNeil objected to Palmer's testimony, and the trial court overruled the objection.

The Commonwealth then called Anthony Williams as a witness. Williams testified how he was at the scene of the shooting and saw McNeil point a gun at Palmer and Johnson, but ran away before McNeil pulled the trigger. He also testified that, despite being at the scene of the shooting, he did not speak with police until after his grandmother implored him to do so. McNeil cross-examined Williams on his delay in speaking with police. Notably, McNeil elicited testimony that Williams was scared to be a witness at trial. On redirect, the Commonwealth asked Williams why he was scared to be a witness, and Williams responded he was scared because of the consequences. McNeil

objected to this line of questioning and ultimately requested a mistrial, which the trial court denied.

The Commonwealth also adduced testimony from Jenkins, whose stolen wallet precipitated the shooting. Jenkins testified about the events leading up to the shooting and specifically mentioned how he sold illegal pills to McNeil shortly before McNeil stole his wallet. McNeil lodged an immediate objection and requested a sidebar. At the sidebar, McNeil notified the trial court that the Commonwealth failed to inform him of Jenkins's testimony regarding the sale of narcotics. McNeil requested a mistrial based on Jenkins's testimony, but the trial court denied McNeil's request. Instead, the trial court issued a cautionary jury instruction directing the jurors to disregard testimony about McNeil's drug purchase.

Following deliberations, the jury found McNeil guilty of murder in the third degree of Johnson, attempted murder and aggravated assault of Palmer, carrying a concealed firearm without a license, carrying a firearm on city streets, and possessing an instrument of crime. The trial court imposed consecutive sentences of incarceration of 20-40 years for murder in the third degree and 10-20 years for attempted murder. The court also sentenced McNeil to a concurrent term of 3 ½-7 years for carrying a firearm without a license. McNeil filed a motion for reconsideration, which the court denied. This appeal is now properly before us.

In his first issue, McNeil argues that evidence of his nickname, "Pistol Pete," was not relevant and, even if relevant, its prejudicial effect outweighed its probative value. He also contends evidence of his nickname suggested he had a violent character and acted in conformity with that character. He therefore contends the trial court erred in admitting evidence of this nickname.

The admission of evidence is within the sound discretion of the trial court and will be reversed only upon an abuse of that discretion. **See Commonwealth v. Woodard**, 129 A.3d 480, 494 (Pa. 2015). An abuse of discretion is not merely an error of judgment, but a misapplication of the law or an unreasonable exercise of judgment. **See Commonwealth v. Sitler**, 144 A.3d 156, 163 (Pa. Super. 2016) (*en banc*).

The threshold inquiry for the admission of evidence is whether the evidence is relevant. **See Commonwealth v. Cook**, 952 A.2d 594, 612 (Pa. 2008). Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. **See** Pa.R.E. 401. However, even if relevant, evidence may be excluded if its probative value is outweighed by a danger of unfair prejudice. **See** Pa.R.E. 403. "Unfair prejudice means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." **Commonwealth v. Lynn**, 192 A.3d 165, 170 (Pa. Super. 2018) (citation and internal quotation marks omitted).

A nickname is relevant evidence and admissible when the Commonwealth uses it to show that witnesses could identify the defendant as the perpetrator of the offense at issue. **See Commonwealth v. Williams**, 58 A.3d 796, 800-801 (Pa. Super. 2012) (holding that the Commonwealth was allowed to refer to defendant by the nickname, "Killa," for the purpose of showing that the witnesses recognized defendant and could identify him as the perpetrator).

Here, the Commonwealth used McNeil's nickname to show that the complaining witness in the case knew McNeil as "Pistol Pete" and identified him to police as the shooter. At trial, the Commonwealth elicited testimony from Jenkins that a man he knew as "Pistol Pete" shot Palmer and Johnson on Edgemore Street. **See** N.T., Jury Trial, 11/21/18, at 25. With that information, the Commonwealth established a connection between Jenkins's identification of McNeil as the shooter, McNeil's arrest, and the discovery of the gun used in the shooting.

McNeil contends on appeal that the Commonwealth should not have been permitted to use his nickname because identity was not at issue in the case. **See** Appellant's Brief, at 29. This view fails to account for the fact that McNeil's defense at trial was that he was not the shooter. **See id**., at 26. In fact, the record shows that McNeil's trial counsel disputed McNeil's involvement in the shooting during closing arguments. **See** N.T., Jury Trial, 11/30/18, at 22-24. Clearly, evidence of McNeil's nickname was relevant and

highly probative as to whether McNeil was the perpetrator of the crime. **See**
**Williams**, 58 A.3d at 800-801.

Furthermore, our review of the record shows that the Commonwealth
did not use McNeil's nickname to suggest McNeil had a violent character and
acted in conformity with that character. **See** Pa.R.E. 404(a)(1) (stating that
character or trait-based evidence cannot be admitted to prove that a person
acted in accordance with either of those dispositions on any particular
occasion). As noted above, the Commonwealth used McNeil's nickname to
show that the complaining witness knew McNeil as "Pistol Pete" and identified
him to police as such. The Commonwealth never intended to use McNeil's
nickname to show McNeil had a violent character. **See** N.T., Jury Trial,
11/15/18, at 12-13. Nor did the Commonwealth introduce evidence of McNeil's
nickname for that purpose. Therefore, we cannot conclude that the
Commonwealth used McNeil's nickname to inflame the jury or demonstrate
that McNeil had a violent character.

Next, McNeil argues that the trial court erred in failing to grant a mistrial
based on testimony that he purchased illegal drugs. According to McNeil, the
testimony had no relevance to any issue at trial. Furthermore, McNeil asserts
that the testimony implicated him in unrelated criminal conduct and therefore
warranted the grant of a mistrial.

Our review of a trial court's denial of a motion for mistrial is limited to
determining whether the trial court abused its discretion. **See**

*Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011). "A mistrial is an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial." *Commonwealth v. Smith*, 131 A.3d 467, 475 (Pa. 2015) (citation omitted). A mistrial is not required where cautionary instructions adequately overcome the alleged prejudice. *See Commonwealth v. Cash*, 137 A.3d 1262, 1273 (Pa. 2016).

On direct examination, Jenkins stated that McNeil bought drugs from him a few days before the shooting. *See* N.T., Jury Trial, 11/20/18, at 186. This fleeting reference prompted McNeil to object and request a sidebar. *See id.*, at 187. During the sidebar, McNeil asked for a mistrial based on Jenkins's testimony. *See id.* In response, the trial court explained that it indicated to the jury during *voir dire* that there would be testimony in the case about drugs and drug dealing. *See id.* The trial court further explained that it inquired as to whether such testimony would affect jurors' ability to be fair and impartial, and each juror answered in the negative. *See id.*, at 188. For that reason, the trial court denied McNeil's motion for a mistrial.

At the conclusion of the sidebar, the trial court gave a cautionary jury instruction regarding Jenkins's testimony, which McNeil agreed was necessary. In doing so, the trial court told the jury that McNeil "is not on trial for any crime relating to drug use." *See id.*, at 193. The trial court then ordered the jury "not to use this testimony in any manner against Mr. McNeil in your consideration of the charges in this case." *See id.* The trial court also allowed

the Commonwealth to advise Jenkins against referring to other instances of criminal conduct by McNeil. **See id**., at 190-192.

Although the reference to McNeil's drug purchase was singular and fleeting, it was not directly relevant to any issue in the case. As our Supreme Court stated, "evidence of drug use, like evidence of any other bad habit of a defendant, should be avoided except when directly relevant to an issue before the fact-finder." **Commonwealth v. Rivera**, 367 A.2d 719, 722 (Pa. 1976). Thus, the jury was exposed to improper testimony about McNeil's illegal drug use.

However, we cannot conclude that the trial court abused its discretion in refusing to grant McNeil's motion for a mistrial. The trial court's curative instruction informed jurors to disregard Jenkins's fleeting reference to McNeil's purchase of illegal drugs. While McNeil claims the instruction failed to cure the harm of the drug reference, McNeil provides no evidence or rationale to overcome the strong presumption that jurors in this case followed the trial court's curative instruction. **See Commonwealth v. Reid**, 99 A.3d 470, 501 (Pa. 2014). Nor is there any evidence that a juror indicated he or she was incapable of disregarding the reference to McNeil's drug purchase. Instead, each juror stated during *voir dire* that testimony about drugs and drug dealing would not affect their ability to be fair and impartial. Hence, McNeil's second issue merits no relief.

In his final issue, McNeil argues the trial court erred by not granting a mistrial after two witnesses, Palmer and Williams, stated they were scared to testify at trial. He claims that Williams and Palmer provided testimony that was highly prejudicial because it permitted the jury to infer that McNeil had engaged in criminal conduct to influence or coerce their testimony. As such, McNeil asserts that he was deprived of a fair and impartial trial.

As an initial matter, we must determine whether McNeil properly preserved this challenge for our review. To preserve a challenge to the denial of a motion for mistrial, a defendant, like McNeil, must object to specific conduct at trial and move for a mistrial. *See Commonwealth v. Sandusky*, 77 A.3d 663, 670 (Pa. Super. 2013). However, where a defendant objects to specific conduct, the failure to request a mistrial is sufficient to constitute waiver. *See Commonwealth v. Strunk*, 953 A.2d 577, 579-580 (Pa. Super. 2008) (citation omitted).

On redirect, the Commonwealth asked Palmer whether he was scared to testify as a witness. *See* N.T., Jury Trial, 11/19/18, at 93. McNeil objected to the Commonwealth's question, and the trial court overruled the objection; however, McNeil did not request a mistrial. *See id*. Because McNeil did not move for a mistrial, he waived his claim regarding Palmer's testimony. *See Strunk*, 953 A.2d at 579-580.

However, with respect to Williams's testimony, our review of the record shows that McNeil preserved this claim. McNeil lodged numerous objections to

the testimony adduced on redirect that explained why Williams was scared to testify as a witness. *See* N.T., Jury Trial, 11/20/18, at 146. The trial court overruled these objections, and McNeil moved for a mistrial, which the trial court denied. *See id*., at 148-149. Therefore, we will address the merits of McNeil's claim regarding Williams's testimony. *See Sandusky*, 77 A.3d at 670.

Because a mistrial is an extreme remedy, Williams's testimony must have had the unavoidable effect of depriving McNeil of a fair and impartial trial. *See Smith*, 131 A.3d at 475. The record does not contain such proof.

As noted above, McNeil elicited testimony from Williams on cross-examination that Williams was scared to testify as a witness. On redirect, the Commonwealth sought to clarify why Williams was scared to be a witness, and Williams did in fact illuminate the reasons for his apprehension. Williams simply stated that, "[n]obody want[s] to sit up here and tell the truth . . . because something might happen to them, I guess." N.T., Jury Trial, 11/20/18, at 148-149.

Contrary to McNeil's assertion, there is nothing in Williams's testimony on redirect to suggest that McNeil had threatened Williams or influenced his testimony at trial. The Commonwealth's redirect examination of Williams followed up on McNeil's cross-examination of Williams in which Williams testified he was scared to be a witness. Nowhere in his testimony did Williams indicate his fear stemmed from McNeil. As such, we conclude the trial court

did not abuse its discretion in concluding that the testimony did not deprive McNeil of a fair and impartial trial.

McNeil's issues lack merit. Therefore, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/7/20